In re LEBOLT.

(Circuit Court, N. D. Illinois. November 9, 1896.)

1. CITY ORDINANCE—POLICE POWER.

The fact that a law or ordinance has been enacted by the authority of a state is not conclusive as to whether it is an exercise of the police power of the state. That question must be determined by the authority of the United States.

2. SAME—VALIDITY—INTERSTATE COMMERCE.

A city ordinance, prohibiting the sale or offering for sale of vinous liquors without a license, is not an exercise of the police power of the state, but is an attempt to regulate one of the products of interstate commerce, and is therefore void.

Petition for writ of habeas corpus, filed by Lazarus E. Lebolt, of the city of Chicago, for his release, being detained under a fine imposed under a city ordinance taxing drummers. Relator discharged.

Moses, Pam & Kennedy, for Lebolt.

Wm. G. Beale, corporation counsel of Chicago.

GROSSCUP, District Judge (orally). In the matter of the petition of Lazarus E. Lebolt for a writ of habeas corpus. The petitioner in this case is the representative of the California Wine Association, and his avocation is to sell the wines of these houses to dealers in the city of Chicago. There exists an ordinance in this city which makes it incumbent upon all dealers in distilled or fermented liquors to take out a license, paying into the city treasury a certain sum of money for such license, and creating penalties for any attempt to sell any of these goods in the city without taking out such license. The ordinance is as follows:

"Section 1. No person, firm or corporation shall sell, or offer for sale, any vinous liquors in quantities of one gallon or more at a time, within the city of Chicago, without first having obtained, as hereinafter provided, a license so to do for each place of business where vinous liquors are so sold or offered for sale. * * *"

The petitioner was arrested, tried, and convicted under this ordinance, and now petitions this court for a writ of habeas corpus upon the ground that the ordinance itself is invalid, as being against the exclusive power of congress to regulate commerce. The sole question is whether this ordinance is an attempted regulation of interstate commerce.

The supreme court of the United States, in an unbroken line of decisions, has held that any attempt to put any burden or restriction upon interstate commerce, either by the way of taxing it, or requiring a license from its agents or drummers, or a discriminating license or tax upon any of its goods or products, is outside the power of a state, and an infringement upon the powers of the national government. The line of distinction, it seems to me, is very clear. The government of the United States has control and exclusive power to regulate interstate commerce. The government of the state has the power to look after police regulations, such as affect the life, health, or morals of the citizens. Now, the sole question in this case is whether this is a regulation of commerce, or whether it is mere police regulation, calculated to affect the life, health, or morals of the citizens of the state. Police regulations may incidentally affect commerce, and yet remain police regulations. For instance, there is unquestionable power in the state to prohibit the importation of infected articles, such as rags from yellow fever countries, or other products from countries where contagion exists, or any products that might carry the germs of smallpox or other infectious diseases. The supreme court has repeatedly held that regulations of that character, although incidentally affecting commerce, were essential to protecting the life, health, and morals of the citizens, and therefore were police in their origin. In that way, those things are taken out of commerce. The state, too, unquestionably has the right to regulate the manner in which certain articles are sold that are the subject-matter of state commerce. Gunpowder, nitroglycerin, poison, and all those things which come from one state into another, and which, except handled in a particular way or preserved in a particular way, would be dangerous to life, or health, or the public morals, can be put within those restrictions that save them from danger without in any way being chargeable with being a regulation of interstate commerce. The supreme court has gone to the extent of saying, in one case, that a law of the state requiring locomotive engineers to take out a license before they are permitted to pursue their avocations as locomotive engineers, although it applied to the engineers on interstate roads, and to men who actually ran from a point in one state to a point in another state in their runs, is not an attempt to regulate interstate commerce, or any of the instrumentalities of interstate commerce, because it is perfectly apparent that the safety of the man who travels is dependent upon getting into the service of the road competent engineers and keeping out of the service of the road incompetent engineers. In all these cases it seems to me that interstate commerce cannot be said to have any rights against the paramount superior right of the life, health, and safety of the citizen. Anything that is essential to the

life, health, and safety of the citizen cannot be a burden on interstate commerce—cannot be a restriction of interstate commerce—because no rightful interstate commerce can justly complain of any such restriction. The difficulty in most of these cases is who is to judge as to whether the supposed regulation is in the interest of life, health, and the morals of the citizen.

It is urged that, whenever the state passes any measure, it becomes the judgment of the state that that measure is in the interest of life, health, and public morals, and that therefore the court must so accept it. I do not quite subscribe to that view. The constitution of the United States, and the laws of congress in pursuance thereof, and the interpretation of the constitution and laws of congress by the courts of the United States, are the supreme law of the land. The United States, therefore, through its constituted tribunals, is the judge as to whether a given exercise of power upon the part of the state is in reality the exercise of a police power, or is only an attempted restriction or regulation of interstate commerce. It may be one or it may be the other, but the judges of that fact are the authorities of the United States and not the authorities of the state. Therefore, the mere fact that this ordinance, or any other ordinance or law upon one of these subjects, has been enacted by the authority of the state, is not in itself determinative of its being an exercise of police power. That remains to be determined when the question is raised in a particular case in one of the tribunals of the nation. If that were not the case, the local interests of each state might very seriously affect interstate commerce. A state in which, for instance, the dairy interest predominates, might hold that oleomargarine was unhealthful, and therefore that its prohibition or its regulation was a matter belonging to the state; whereas, the people of the United States might look upon oleomargarine as a healthful product, and cheaper than the product produced by the dairy interests. On the other hand, in a state where the lard interest predominated, it might look upon the dairy interest as unhealthful to the people. The fact is that there are many doctors now who frighten one every time he eats butter or drinks milk as taking on himself the danger of tuberculosis. So that, if the several regulations were to be left with the local governments, there would be no telling where the power would fall in one case and where it would fall in another. But it is left with the national power in its national tribunals.

So the sole question that arises now is, not what has Illinois (or its submunicipal agency, the city of Chicago) determined respecting the sale of intoxicating liquors, as to whether it is against the life, health, or morals of the citizen, but what is the public policy of the United States upon that question. If, in view of the public policy of the United States, this traffic is not against the health and morals of the citizen, then this ordinance cannot be defended on the ground that it is a police regulation. Now, the supreme court, in the original package cases (Leisy v. Hardin, 10 Sup. Ct. 681), and in some other cases, has held that the traffic in liquors, in pure liquors, including wines and distilled spirits, is not in itself immoral, or a dan-

gerous or deleterious traffic; that it has always been one of the commercial products traveling between state and state; and that it is entitled to the same benefit and protection that all products, whether of food or luxury or otherwise, are entitled to. In that view of the public policy of the United States respecting this traffic, I am bound to hold that this ordinance is not an exercise of the police power of the state, but is simply an attempted regulation of one of the products of interstate commerce,—an attempted regulation, not in the interest of public health and public morality, but in the interest simply of raising a revenue for the city; and, that being the case, it must be held to be invalid.

The petition of the petitioner will be sustained, and an order may be entered setting him at large.