McNAUGHTON CO., Appellant, v. THOMAS McGIRL,
RESPONDENT.

[Re-submitted January 4, 1897.  Decided July 10, 1897.]

### Constitutional Law — Interstate Commerce.

1. Article 1, Section 8, United States Constitution, relating to the regulation of interstate commerce applies to such commerce when carried on by a corporation as well as when conducted by a natural person.
2. A corporation organized under the laws of another state, which sends an agent into the State of Montana to solicit and buy wool to be consigned to its warehouses in other states, is engaged in interstate commerce within the meaning of Article 1, Section 8, United States Constitution.
3. The Montana Statute relating to foreign corporations doing business in this state, and declaring that all of the acts of such a corporation are void, if it has not complied with the provisions of that law, is void as to such corporation when engaged in interstate commerce.

*Appeal from District Court, Yellowstone County.    George R. Milburn, Judge.*

Action by the McNaughton Company, a corporation, against Thomas McGirl, to recover money advanced defendant by plaintiff on his wool clip.  From a judgment in favor of defendant, plaintiff appeals.  Reversed and remanded.

Statement of the case by the justice delivering the opinion.

The plaintiff and appellant herein, a corporation organized and existing under the laws of the state of New Jersey, at the time of this suit and of the transaction which brought it about, was doing a commission business, as a wool commission merchant, in the states of New York and Massachusetts, and the state of Montana.  The complaint alleged that in July, 1892, the defendant, at Billings, Montana, consigned a wool clip to plaintiff, in New York, to be sold by plaintiff for defendant on 60 days' credit, the proceeds thereof to be paid to defendant by plaintiff, less the commission on sales, interest on moneys advanced, freight and interest thereon, discount on sales not due, cartage, and advances.  It is alleged that plaintiff, to accommodate defendant, deposited in the hands of de

fendant, on account of the transaction between the parties, the sum of $7,019.20, as an advance payment in case of the sale of said wool, on the net proceeds thereof, to be kept by defendant on account of the net sales of the wool if the said wool sold for enough, less commission and charges, to amount to $7,019.20, but that any amount over and above the net proceeds of the sale of the wool, or the difference between the net proceeds of the sale and the $7,019.20, if any, should be subject to a drawback by the plaintiff, and be to and for the use of plaintiff, and to be returned to the plaintiff by defendant if the net proceeds of the wool did not amount to the sum advanced; that pursuant to this agreement the defendant's wool was consigned to plaintiff; and that some time thereafter it turned out that on the accounting pertaining to the transaction between plaintiff and defendant a balance was found due and owing by defendant to plaintiff, inasmuch as the wool did not sell for a sufficient sum to fully pay plaintiff for its advances to defendant, and the charges agreed to be paid.    Judgment was asked for the amount claimed to be due as a drawback.

The defendant admitted that he had consigned the wool to plaintiff to be sold for him, and that he had been paid by plaintiff, as an advance on said consignment of wool, the sum of $7,019.20, but denied all of the alleged agreement concerning the shipment of the wool subject to the drawback claimed by plaintiff.

For an affirmative defense the answer also averred that there was to be no drawback, and that, if the wool did not sell for an amount sufficient to cover the advance made by the plaintiff, it would bear the loss.    Among other defenses pleaded, it was averred that plaintiff could not maintain his action for the reason that plaintiff was a corporation organized under the laws of the state of New Jersey, and had not complied with Chapter 24, Fifth Division, General Laws of the Compiled Statutes of Montana, in that it had not filed in the office of the Secretary of State, or with the County Clerk of Yellowstone county, a duly-authenticated copy of its charter

or certificate of incorporation, and the statement required by section 442 of the law referred to, and in. other respects had not complied with said law, or with the provisions of an act of the Third Legislative Assembly of the State of Montana entitled "An act to provide the conditions upon which foreign corporations may do business in this state," approved March 8, 1893.

The cause was tried to a jury, and evidence heard. The court then, of its own motion, instructed the jury that inasmuch as the plaintiff was a foreign corporation, and had not complied with the act of the Third Legislative Assembly providing the conditions upon which foreign corporations might do business in Montana, the act and contract of the plaintiff with the defendant was void as to the corporation, and could not be enforced in the District Court, and that it. was the duty of the jury to find for the defendant. In accordance with this instruction of the court, a verdict was rendered for the defendant for costs. A motion for a new trial was made and over-ruled. The plaintiff appeals.

*Gib. A. Lane*, for Appellant.

*O. F. Goddard*, for Respondent.

HUNT, J.—The plaintiff, a corporation of New Jersey, doing business in that state, and in the states of New York and Massachusetts, as wool commission merchant, sent an agent into Montana to solicit consignments of wool to its Eastern houses, there to be sold on commission by plaintiff for the benefit of certain consignors, woolgrowers of the State of Montana. It had various transactions of this nature with woolgrowers in Montana. In the particular case before us the exact terms of the agreement between the plaintiff and the defendant gave rise to this litigation, but the facts were undisputed that plaintiff advanced a large sum of money to defendant upon his wool, and that the defendant's wool was consigned to plaintiff at New York, to be sold there by plaintiff, who was to credit defendant with the amount of the sale. The

real contention between the parties was whether the shipment so made was subject to a drawback by plaintiff against defendant if the wool did not net a sufficient sum in New York to cover plaintiff's advances to defendant, including interest, costs, etc., or whether the burden of any loss that there might be was to fall entirely on plaintiff.

The defendant availed himself of several defenses, including the one upon which the court directed a finding in his favor, namely, that the contract sued on was void as to the corporation, and could not be enforced in favor of the corporation.

By an act of the Legislative Assembly of the State of Montana approved March 8, 1893, every foreign corporation, before it commenced to do business in Montana, was required to file a certificate with the Secretary of State, designating an agent, who must be a citizen of Montana, upon whom service of process might be had, and also stating the principal place of business of such corporation in this state. It was also provided by Section 2 of said act that, if any foreign corporation failed to comply with the provisions of the law, all its contracts made and entered into with citizens of this state should be void as to the corporation, and that no court of this state should enforce the same in favor of the corporation. Inasmuch as plaintiff did not comply with the statute just cited, the important question raised is whether or not, if the plaintiff's facts alleged in its complaint are true, and the defendant does in reality owe to plaintiff the amount sued for as a drawback, plaintiff can recover on its contract.

It has been repeatedly laid down by the Supreme Court of the United States that interstate commerce carried on by corporations is entitled to the same protection against the exactions of a state which is given to such commerce when carried on by individuals. We are aware that the construction put upon Section 2, Article 4 of the Constitution of the United States, which provides that the citizens of each state shall be entitled to all privileges and immunities of the citizens of the several states, has been generally uniform, to the effect that the language of that clause relates only to natural persons,

and not to artificial bodies, as corporations, and that the privileges and immunities guaranteed by the language referred to mean those of the general nature granted to a state's own citizens, and not those special privileges conferred upon corporate bodies. (*Lafayette Insurance Co.* v. *French*, 18 How. 404; *Bank* v. *Earle*, 13 Pet. 519; *Ducat* v. *Chicago*, 10 Wall. 410; *Paul* v. *Virginia*, 8 Wall. 168; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. 1118.) But, in the carrying on of interstate commerce corporations are guaranteed the same rights and are entitled to the same protection as individuals. The Supreme Court in *Gloucester Ferry Co.* v. *State of Pennsylvania*, 114 U. S. 204, 5 Sup. Ct. 826, expressly held that it did not make any difference whether such commerce is carried on by individuals or by corporations.

Justice Bradley, sitting on the circuit bench in the case of *Stockton* v. *Railroad Co.*, 32 Fed. 9, used the following language : "And, in carrying on foreign and interstate commerce, corporations, equally with individuals, are within the protection of the commercial power of congress, and cannot be molested in another state by state burdens or impediments. This was held and decided in the case of *Gloucester Ferry Co.* v. *State of Pennsylvania*, 114 U. S. 204, 5 Sup. Ct. 826, and affirmed in the recent case of *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. 1118; and although the decision in *Paul* v. *Virginia*, 8 Wall. 168, conformed to the doctrine of *Bank* v. *Earle*, the following striking language was used by the court, to wit : 'At the time of the formation of the constitution a large part of the commerce of the world was carried on by corporations. The East India Company, the Hudson Bay Company, the Hamburg Company, the Levant Company, and the Virginia Company may be named among the many corporations then in existence which acquired, from the extent of their operations, celebrity throughout the commercial world. This state of facts forbids the supposition that it was intended, in the grant of power to congress, to exclude from its control the commerce of corpo-

rations.   The language of the grant makes no reference to the instrumentality by which commerce may be carried on.   It is general, and includes alike commerce by individuals, partnerships, associations and corporations.'

"We may fairly supplement this language by adding that, when the constitution was adopted, it could not have been supposed that the regulations of commerce to be made by congress might be of no avail to commercial corporations, or at least might be rendered nugatory, with regard to them, in consequence of state restrictions upon their power to act as corporations in any other state than that of their origin."

We may, therefore, proceed with the investigation of the case, relying upon the truth of the proposition that, if the transactions between the plaintiff and the defendant in this case were commerce among the several states, congress alone could regulate such commerce, under the Constitution of the United States, and the state had no power to regulate that commerce, or impose any obligation or exaction upon the plaintiff which it could not impose or exact upon an individual transacting the same business.

Now we inquire, what was the nature of the business done, and was it interstate commerce ?   If we find that it was interstate commerce, did the statute obtain requiring the corporation to file the certificate referred to as a condition precedent to its right to purchase the wool of the defendant in the manner that it did, and was it an attempt on the part of the state to regulate commerce among the several states, and, therefore, null and void ?

In the case of *Gibbons* v. *Ogden,* 9 Wheat. 1, Chief Justice Marshall, in one of his greatest opinions, discussed Section 8, Art. 1, of the Constitution of the United States, in which congress has been granted the power "to regulate commerce with foreign nations and among the several states and with the Indian tribes."   He said :   "The subject to be regulated is commerce, and our constitution being, as was aptly said at the bar, one of enumeration, and not of definition, to ascertain the extent of the power it becomes necessary to settle the

meaning of the word. The counsel for the appellee would limit it to traffic—to buying and selling, or the interchange of commodities—and do not admit that it comprehends navigation. This would restrict a general term, applicable to many objects, to one of its significations. Commerce undoubtedly is traffic, but it is something more—it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse."

In *Welton* v. *State of Missouri*, 91 U. S. 275, Justice Field used the following language : " 'Commerce' is a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities between the citizens of our country and the citizens or subjects of other countries, and between the citizens of different states. The power to regulate it embraces all the instruments by which such commerce may be conducted. So far as some of these instruments are concerned, and some subjects which are local in their operation, it has been held that the states may provide regulations until congress acts with reference to them; but where the subject to which the power applies is national in its character, or of such a nature as to admit of uniformity of regulation, the power is exclusive of all state authority.

" It will not be denied that that portion of commerce with foreign countries and between the states which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation. The very object of investing this power in the general government was to insure this uniformity against discriminating state legislation."

Again we find Justice Field defining for the court what commerce among the states consists of, as comprehended by the Constitution of the United States, in the case of *County of Mobile* v. *Kimball*, 102 U. S. 691.

He there said : "Commerce with foreign countries and among the states, strictly considered, consists in intercourse

and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities.  For the regulation of commerce as thus defined there can be only one system of rules, applicable alike to the whole country, and the authority which can act for the whole country can alone adopt such a system.  Action upon it by separate states is not, therefore, permissible.  Language affirming the exclusiveness of the grant of power over commerce as thus defined may not be inaccurate, when it would be so if applied to legislation upon subjects which are merely auxiliary to commerce." ·

In the still later case of *Gloucester Ferry Co.*, *supra*, the same justice, speaking for the court, said: "Commerce among the states consists of intercourse and traffic between their citizens, and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities. The power to regulate that commerce, as well as commerce with foreign nations, vested in congress, is the power to prescribe the rules by which it shall be governed—that is, the conditions upon which it shall be conducted; to determine when it shall be free, and when subject to duties and other exactions.  The power also embraces within its control all the instrumentalities by which that commerce may be carried on, and the means by which it may be aided and encouraged.  The subjects, therefore, upon which the power may be exerted, are of infinite variety.  While with reference to some of them which are local, and limited in their nature or sphere of operation, the states may prescribe regulations until congress intervenes and assumes control of them, yet when they are national in their character, and require uniformity of regulation, affecting alike all the states, the power of congress is exclusive.  Necessarily that power alone can prescribe regulations which are to govern the whole country.  And it needs no argument to show that the commerce with foreign nations and between the states, which consists in the transportation of persons and property between them, is a subject of national

character, and requires uniformity of regulation. Congress alone, therefore, can deal with such transportation. Its non-action is a declaration that it shall remain free from burdens imposed by state legislation. Otherwise there would be no protection against conflicting regulations of different states, each legislating in favor of its own citizens and products, and against those of other states. It was from apprehension of such conflicting and discriminating state legislation, and to secure uniformity of regulation, that the power to regulate commerce with foreign nations and among the states was vested in congress."

In *McCall* v. *California*, 136 U. S. 104, 10 Sup. Ct. 881, Justice Lamar quotes approvingly the followingly definition of "commerce" as given by Pomeroy on page 376.of his work on Constitutional Law : "It includes," says Pomeroy, "the fact of intercourse and of traffic, and the subject-matter of intercourse and traffic. The fact of intercourse and traffic, again, embraces all the means, instruments, and places by and in which intercourse and traffic are carried on, and, further still, comprehends the acts of carrying them on at these places, and by and with these means. The subject-matter of intercourse or traffic may be either things, goods, chattels, merchandise, or persons. All these may therefore be regulated."

In *Cook* v. *Brick Co.*, Ala., 12 South. 918, the Supreme Court of Alabama decided that the sale of bricks in another state, to be delivered in Alabama, or the filling of an order sent from Alabama for bricks in another state, is an act of interstate commerce, not affected by the statutes of Alabama, which required a foreign corporation to have a place of business and an agent in Alabama as a condition precedent to its capacity to do business in Alabama.

A like decision was made very recently by the Supreme Court of Tennessee. *State* v. *Scott*, 39 S. W. 1. A law of Tennessee required every person, other than photographers of the state, who solicited pictures to be enlarged outside of Tennessee, to pay a certain sum per annum as a privilege tax. But the court held the statute unconstitutional, and used the following language :

"Enlargement of pictures by citizens of other states for citizens of this state is the primary matter, though the tax is in terms laid upon other persons engaged, as agents, in the promotion thereof. The process of enlarging involves the making of a larger picture after the image or likeness of a smaller one. When this is done by one person upon the order of another, and the larger picture is delivered for a consideration, the parties have certainly had a commercial transaction; and if they be citizens of different states, and the picture be made in one state and sent into the other state, as indicated in the statute and averred in the presentment, the transaction, as between the principals, is, as obviously, interstate commerce: The latter is a commercial transaction between citizens of different states, and that is what 'interstate commerce' means. Whether the transaction be conducted directly or entirely by the principals themselves, or in part by the agency of another, is of no consequence. It is interstate commerce in both instances. So there is no room for doubt that the enlargement of pictures referred to in the statute is, to all intents and purposes, interstate commerce."

Now, when we apply to the facts of this case the principles of the foregoing definitions, what do we have? The plaintiff corporation sent its agent into Montana to solicit or buy wool to be consigned to its wool houses in other states, wherein it does its principal business. The agent did no other kind of business for the corporation in Montana. Such being the case, it seems clear to us his business directly pertained to interstate commerce. It related to intercouse and traffic between Montana and New York, and the subject-matter of the intercourse and traffic was the wool itself. If the Northern Pacific Railroad in transporting the wool over its road between Montana and Minnesota was engaged in interstate commerce—as clearly it was—we cannot perceive how the transaction by which the wool itself was exchanged through consignment or sale by defendant to plaintiff can be excluded from any reasonable definition of "commerce among the states." The sale and exchange of wool is among the great

operations of the commercial world.    It is, like traffic in cot-
ton or wheat or corn, a subject of frequent intercourse be-
tween citizens of the different states and different nations.
The railroad transportation is a part of the commerce—the
instrument or vehicle of intercourse; the wool, the essential
subject-matter of the intercourse and traffic.

It being our opinion from what we have said that the
plaintiff corporation was engaged in a business which was
strictly interstate commerce, no law of the state could control
or restrict such commerce by exacting conditions for permit-
ting the plaintiff to do such business.    The argument that a
foreign corporation has its domicile in the state from which it
derives its existence, and that its right to transact business
elsewhere, and to enforce its contracts made in other states,
depends purely upon the comity of those states, is not per-
tinent.    The power of a state to make discriminations in
privileges granted to foreign corporations may be exercised
where a foreign corporation desires to do business within the
limits of the state, not strictly interstate or foreign commerce.
This may be illustrated by familiar instances of cattle and
sheep companies, or mining and smelting corporations, in
Montana.    No foreign corporation, we take it, organized for
any of the purposes for which such associations are usually
formed, and desirous of carrying on its business and of ac-
quiring a domicile in Montana, can escape the consequences of
omission to comply with the terms and conditions upon which
it has a right to do business within the state.    Indeed, such
corporations, in the exercise of legislative discretion, may be
excluded from the state altogether, as was laid down in *Paul*
v. *Virginia*, 8 Wall. 168, and *Horn-Silver Min. Co.* v. *State
of New York*, 143 U. S. 305, 12 Sup. Ct. 403.    Such con-
ditions or restrictions, however, are permissible upon the
ground that a state may not be willing, upon grounds of a
policy of its own, to have a corporation, even if legally cre-
ated under the laws of the state of its creation, establish a
business in Montana, or the state may demand of it a license
tax, or the performance of any other reasonable condition,

before it can claim the same protection in the conduct of its business that is accorded to like corporations within the jurisdiction of the state. *Pembina Con. Silver Mining & Milling Co.* v. *Pennsylvania*, 125 U. S. 181, 8. Sup. Ct. 737.

But a most vital limitation in this respect·upon the power of the state springs up where the business of the foreign corporation is commerce between the corporation, the creature of the legislature of one state, and a citizen of another state. *Pembina Con. Silver Mining & Milling Co.* v. *Pennsylvania*, *supra*. As against all such foreign corporations engaged in interstate commerce, the state can pass no prohibitory law, constitutional or statutory, without impinging upon the commercial clause of the Constitution of the United States.

The decisions of the United States Supreme Court justify these views. In *Cooper Manuf'g Co.* v. *Ferguson*, 113 U. S. 734, 5 Sup. Ct. 739, the court had before it·statutes quite similar to those upon which respondent in this case relies; and, while the decision was based upon the ground that the statute could not affect a corporation under the laws of one state which did a single act of business in another, still there is language in the opinion recognizing the doctrine that the statute could not be construed "to impose upon a foreign corporation limitations of its right to make contracts in the state for carrying on commerce between the states, for that would make the act an invasion of the exclusive right of congress to regulate commerce among the several states."

The implication from this language is that if a foreign corporation has sent an agent into Montana, and made a contract within the latter state for the consignment of wool between Montana and New York, no construction can be put upon the statute of Montana which would render such a contract void without invading the exclusive right of congress. If, therefore, this contract sued upon was lawfully made, notwithstanding a statute which declares or attempts to declare it void, it follows that any legislation of the state which seeks to prevent the enforcement of the contract is equally an invasion of the exclusive right of congress. It must be true that, if

the state cannot declare the contract void, it cannot prevent the enforcement of the contract.

In the case of *Cooper Manuf 'g Co.* v. *Ferguson, supra,* there is a brief concurring opinion by Justices Matthews and Blatchford, in which they planted themselves firmly upon the broader ground that the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado, was commerce, and that for the state of Colorado to prohibit it, except upon conditions, was to regulate commerce between Colorado and Ohio, which lay exclusively within the province of congress. ''It is quite competent, no doubt,'' said Justice Matthews, ''for Colorado to prohibit a foreign corporation from acquiring a domicile in that state, and to prohibit it from carrying on within that state its business of manufacturing machinery. But it cannot prohibit it from selling in Colorado, by contracts made there, its machinery made elsewhere, for that would be to regulate commerce among the states.''

The facts in that case, as also in the case of *State* v. *Scott,* Tenn. Sup., 39 S. W. 1, heretofore cited, and that of *Bateman* v. *Milling Co.,* Tex. Civ. App., 20 S. W. 931, present the converse of the case at bar. The foreign corporations in all those instances were domiciled in other states, and through their commercial agents solicited business and sold and shipped goods to points in the other states, in which laws existed imposing upon foreign corporations compliance with certain conditions precedent to their right to do business within such states. But the opinions were all based upon the reasoning that the goods sold were commodities subject to barter and sale, and that the sale, transportion, and delivery of goods and the transaction of business between a foreign corporation of one state and a citizen of another state constituted interstate commercial transactions, which corporations, as well as individuals could carry on free from any restraints · by any state.

But, as we have heretofore seen, the transaction pertaining

to the wool shipped by the defendant to the plaintiff in this case is obviously brought within the same rule.    It is just as much an interstate commerce transaction to export wool from Montana to New York as it is to import clothes made of the wool from New York to Montana.    Either transaction is interstate commerce, and neither can be interfered with by local law.

Of course, this exclusive power of the regulation of interstate commerce by congress does not interfere with the police power of the state.    Police regulations often incidentally affect commerce, but they still remain police regulations. The line of distinction between an attempt to put a burden or restriction upon interstate commerce, and the police power of the state, has been very recently discussed by Judge Grosscup *In re Lebolt*, 77 Fed. 587, who thus expressed himself :

"The Supreme Court of the United States, in an unbroken line of decisions, has held that any attempt to put any burden or restriction upon interstate commerce, either by the way of taxing it, or requiring a license from its agents or drummers, is a discriminating license or tax upon any of its goods or products, is outside the power of a state, and an infringement upon the powers of the national government.    The government of the United States has control and exclusive power to regulate interstate commerce.    The government of the state has the power to look after police regulations, such as affect the life, health, or morals of the citizens."

The decision of Judge Grosscup in the case quoted from was to the effect that an ordinance of the city of Chicago which prohibited the sale or the offering for sale of vinous liquors in Illinois by the representative of a California association, without a license, was not an exercise of the police power of the state, but was an attempt to regulate interstate commerce, and consequently invalid.    It has also been held in the case of *McCall* v. *California, supra*, that where a statute affects commercial transactions among states only in such an indirect, incidental, and remote manner as not to burden or impede interstate commerce, it is not in conflict with the Constitution of the United States.    But there again a

different rule applies from that which must be applied in this case.

We do not think it necessary to proceed any further in this discussion.   It has been so repeatedly held by the Supreme Court of the United States that every tax on interstate commerce is a burden on that commerce, and, if imposed by the legislature of a state, is illegal, that it is scarcely necessary to cite more decisions to that effect.   They are referred to in *Leloupe* v. *Port of Mobile*, 127 U. S. 640, 8 Sup. Ct. 1380, and are reviewed by the Supreme Court of Tennessee in *State* v. *Scott, supra*.   The trend of the later decisions of the Supreme Court has been, we think, to extend the protection afforded to the carrying on of interstate commerce by including within the definition of the words any form of interstate commerce, "whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on."   *Lyng* v. *Michigan*, 135 U. S. 161, 10 Sup. Ct. 725; *Crutcher* v. *Kentucky*, 141 U. S. 58, 11 Sup. Ct. 851; *Brennan* v. *City of Titusville*, 153 U. S. 302, 14 Sup. Ct. 829.

As the country has developed, and commercial intercourse between the citizens of the several states has expanded, and facilities for the conduct of such commerce have so vastly multiplied, the wisdom and perspicuity of the framers of the constitution in preserving in congress the exclusive right to regulate and control such commerce, and to preserve it wholly free from any local interference or impediment on the part of the state, is too apparent to need comment.   It may be safely said that one of the causes for the developement of the states is the business relations between citizens of different states— relations which, in turn, exist because of the guaranty by the federal constitution that interstate commerce shall remain free from any imposition or discrimations of state legislation.

The sequel of these views is that the contract alleged to have been made between the plaintiff corporation and the defendant was, if made as a fact, valid and enforceable; and,

the transaction being one of lawful interstate commerce, it could in no manner be affected by any statute of the state imposing conditions (not in the exercise of the police power) upon plaintiff precedent to its capacity to enter into the contract. Perhaps the legislature did not mean to extend the statute under consideration to foreign corporations engaged in interstate commerce. The presumption would be that they did not, but whatever the purpose may have been in this respect is immaterial to this discussion; for, if it was intended to include such foreign corporations, we hold the statute unconstitutional in that respect.

The judgment is therefore reversed, and the cause is remanded for a new trial.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.