CASE 29.—PROSECUTION AGAINST THE RYMAN STEAM-BOAT LINE CO. FOR CARRYING ON BUSINESS IN THIS STATE WITHOUT A KNOWN PLACE OF BUSINESS AND AN AGENT THEREAT UPON WHOM PROCESS CAN BE SERVED.—April 10.

# Ryman Steamboat Line v. Commonwealth

Appeal from Livingston Circuit Court.

J. F. GORDON, Circuit Judge.

Defendant convicted and appeals.    Reversed.

1. Commerce—Subjects of Regulation—Navigable Waters.— The Cumberland river, being navigable, is a natural highway for commerce between two or more states, and jurisdiction over it for purposes of interstate commerce is in Congress.
2. Same—Jurisdiction of United States Courts.—Under the commerce clause of the United States Constitution (section 2, art 3), maritime jurisdiction over the nontidal navigable inland waters of this country where they are susceptible of use for interstate traffic, is vested in the United States courts.
3. Same—Foreign Corporations—Regulation.—Ky. Stat., 1903, section 571, which provides that all corporations carrying on business in this state shall have one or more known

places of business in the state, and an authorized agent thereat _upon whom process can be served, and making it unlawful for such corporations to carry on any business in the state without complying with the requirements of the section, and filing a statement with the Secretary of State, etc., is void, in so far as it affects steamship companies engaged in interstate traffic, because in conflict with Const. U. S. art. 1, sec. 8, subsec. 3, providing that Congress shall have the exclusive power to regulate commerce among the several states.

HENDRICK, MILLER & MARBLE for Appellant.

W. S. PRYOR of Counsel.

## POINTS AND AUTHORITIES.

The judgment should be reversed for the following reasons:

1. Because the appellant was not properly before the court, and the motion to quash the return should have been sustained and a new trial should have been granted. (Criminal Code, sections 146 and 147; Civil Code, section 51, subsection 4).

2. Because the amount of the fine was unreasonable and excessive and seems to have been rendered under the influence of passion or prejudice. (Criminal Code, sec. 11; Civil Code, sec. 340, subsec. 4; 1 Mar., 431; 16 B. M., 587; 2 Met. 122—560; 3 Dana, 464; 1 Bibb, 249; 83 Ky., 137; 11 Bush, 510).

3. Because the indictment was insufficient, and did not charge a public offense. (Criminal Code 122-124; Com. v. Briggance, 3 Rep., 633; Com. v. Castleman, 8 Rep., 608; Com. v. Slaughter, 12 Rep., 893; Daviess Gravel Road Co. v. Com., 14 Rep., 812; Brooks v. Com., 98 Ky., 143; Ky. St. Section 571; Bogard v. I. C. R. R. Company, 25 Rep., 624; Mount v. Com., 1 Duv. 90; Com. v. Perrigo, 3 Met., 5; Com. v. Dudley, 3 Met., 221; White v. Com., 9 Bush, 178; Com. v. Williams, 13 Bush, 267; Stowers v. Com., 12 Bush, 342; Foster v. Com., 12 Bush, 374; Kennedy v. Com., 2 Met., 36; Com. v. White, 18 B. M., 492; Com. v. Monarch, 6 Bush, 298; Com. v. Green, 80 Ky., 178; Station v. Com., 3 Ky. Law Rep., 471; Com. v. Clark, 4 Ky. Law Rep., 622; Com. v. Milby, 15 Ky. Law Rep., 568; Pike v. Com., 2 Duv., 89; Com. Stout, 7 B. M., 247; Com. v. Cook, 52 Ky., 148; Ward v. Com., 14 Bush, 233; Thompson on Corporations, vol. 5, section 6436; Cyc., vol. 10, 1231; Com. v. C. N. O. & T. P. R. R. Co., 6 Rep., 306; Nichols v. Bradwell Lodge 105 Ky., 172; Brooksville

Ryman Steamboat Line Co. v. Commonwealth.

R. R. Co. v. Byron, 20 Rep., 1941; Ky. Statutes, sections 539-542-576).

4.  Because the state court had no jurisdiction of the offense attempted to be charged in the indictment, because the navigable waters of this country are under the exclusive control of Congress, and section 571 of the Ky. Stats. violates article 1, section 8, of the Constitution of the United States and is therefore, void.  (Gibbons v. Ogden, 9 Wheaton, 1; Sinnot v. Davenport, 22 Howard, 227; Foster v. Davenport, 22 Howard, 244; The Daniel Ball, 10 Wallace, 557; Moran v. New Orleans, 12 U. S., 56; Crutcher v. Com., 144 U. S., 47; St. Louis v. Consolidated Coal Co., 158 Mo., Same case 81 Am., State Reports 310; The State v. Northern Pacific Express Co., 27, Mon., 419; Same case 94 Am., State Reports, 824; Constitution of United States Article 1 Sec., 8).

N. B. HAYS, Atty. Gen'l. and C. H. MORRIS for Commonwealth.

POINTS AND AUTHORITIES CITED.

1.  We shall insist that this appeal ought to be dismissed, and that the court should dismiss same, without going into the merits of the case.  (Criminal Code, sections 280, 281, 282; Civil Code, sec. 334; Wilkerson v. Commonwealth, 88 Ky., 30; Merritt v. Commonwealth, 11 R., 17; Brown v. Commonwealth, 14 Bush, 300; Ellis v. Commonwealth, 9 R., 824; Crockett v. Commonwealth, 10 R., 159; Redmon v. Commonwealth, 82 Ky., 335; Bronson v. Commonwealth, 92 Ky., 333; Vinegar v. Commonwealth, 104 Ky., 110; Kennedy v. Commonwealth, 14 Bush, 340; Rutherford v. Commonwealth, 78 Ky., 639; Day v. Commonwealth, 29 R., 814-816).

2.  We contend that the return upon the summons shows that the law has been complied with, in so far as propriety of service is concerned.

3.  There is no bill of exceptions in the record.  There is no bill of evidence.  There is nothing signed or certified by the judge of the court below upon which this court may act.  We think in default, the fine might reasonably have been placed at the maximum, and then this court could not say that the verdict was excessive, in the absence of something on which to base an opinion.

4.  The indictment follows the language of the statute, and conforms to sections 122 and 124 of the Code of Practice.

5.  The contention is that the state court had no jurisdiction

of the offense attempted to be charged in the indictment, because the navigable waters of this country are all under the exclusive control of congress.

We do not believe that this court should now be required to decide this question. The lower court was not called upon to, nor did it decide whether or not the requirement that defendant corporation should comply with section 571, was an interference with interstate commerce.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

Appellant, under the name of the "Ryman Line," operates a line of steamboats engaged in the coast trade plying between the ports of Nashville, Tenn., on the Cumberland river, and Evansville, Ind., on the Ohio. The boats touch at points in Kentucky, and in Livingston county, for the purpose of receiving and discharging freight and passengers, interstate commerce as well as interstate traffic. Appellant does not, or at least did not, so far as appears, maintain any wharfboat, depot, or agency in Livingston county. It was indicted for violating section 571, Ky. Stats., 1903, which provides that all corporations carrying on business in this State shall at all times have one or more known places of business in this State, and an authorized agent thereat upon whom process can be served, and making it unlawful for such corporation to carry on any business in this State without complying with the requirements of the section and filing a statement with the Secretary of State giving the location of its place of business and the name of its agent upon whom process can be served. For a violation of the statute a fine of from $100 to $1,000 may be imposed. Appellant was convicted under this statute for failing to file the statement with the Secretary of State, and fined $500.

Brushing aside some technical points not deemed material to the decision, the real question is: Is it competent for the State to require of a steamboat company engaged in interstate traffic, as a condition precedent to doing interstate business in this State, to file the statement in question?

By the Constitution of the United States (article 1, sec. 8, subsec. 3), Congress has the exclusive power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes. The Cumberland river is navigable in fact from its mouth to a point far above Nashville. It is therefore a natural highway for commerce between two or more states, and, as such, is the property of the public constituting the country at large. Jurisdiction over it for purposes of interstate commerce is in the Congress of the United States. Gilman v. Philadelphia, 3 Wall. 713, 18 L. Ed. 96; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Willson v. Black Bird Creek Marsh Co., 2 Pet. 245, 7 L. Ed. 412. Under the commerce clause of the Constitution of the United States, it is held that maritime jurisdiction over the nontidal navigable inland waters of this country, where they are susceptible of use for interstate traffic, is vested in the courts of the United States, and has been so exercised since Judiciary Act Sept. 24, 1789, c. 20, 1 Stat. 73 (section 2, art. 3, Const. U. S.), and was so exercised even under the Confederation. Penhallow v. Doane, 3 Dall. 54, 1 L. Ed. 507. The navigation acts passed by Congress, long before the question became one of such apparent importance and magnitude, were assumptions by the federal government of its jurisdiction with respect to the subject of such interstate traffic. Licenses are issued to the coast trading vessels by the United States government in

virtue of that jurisdiction; and it was early declared, in the very infancy of steamboat navigation, that such licenses necessarily carried full authority to the licensees to navigate interstate waters, and to carry interstate commerce, unmolested so far as the privilege, itself was concerned by any state, whether by attempt at direct regulation, or indirectly, as by taxing the business. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Sinnot v. Davenport, 22 How. 227, 16 L. Ed. 243; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649. In Gibbons v. Ogden, supra, the leading case on the subject, discussing the effect of the license granted, by the federal government under the acts of Congress, it was said: "The grant of the privilege is an idle, empty form, conveying nothing, unless it convey the right to which the privilege is attached, and in the exercise of which its whole value consists. To construe these words otherwise than as entitling these ships or vessels described to carry on the coasting trade would be, we think, to disregard the apparent intent of the act." And again, speaking of the fourth section of Act. Cong., Feb. 18, 1793, c. 8, 1 Stat. 306, it was said: "The word 'license' means permission or authority, and a license to do any particular thing is a permission or authority to do that thing, and, if granted by a person having power to grant it, transfers to the grantee the right to do whatever it purports to authorize. It certainly transfers to him all the rights which the grantor can transfer to do what is in the terms of the license."

In Sinnot v. Davenport, supra, it appears that the steamboat Bagby was engaged in the coasting trade, plying between New Orleans, in Louisiana, and Montgomery and other points, in Alabama, touching at Mobile. She had a license as such from the govern-

ment of the United States. The state of Alabama had passed an act entitled "An act for the registration of the names of steamboat owners." The purpose of that act was not essentially different from our statute, so far as it applies to the operation of steamboats owned by corporations. For a failure to comply with the Alabama statute, the courts of that state administered a penalty of $500 against the steamer. On a writ of error to the supreme court of Alabama from the supreme court of the United States, the state and federal statutes were reviewed, and the latter court held that, if the state law should be upheld, the full enjoyment of the right to carry on the coasting trade under the enrollment and license by the federal authorities would be denied the vessel in question. It was there said: "The whole commercial marine of the country is placed by the Constitution, under the regulation of Congress, and all laws passed by that body in the regulating of navigation and trade, whether foreign or coastwise, is therefore but the exercise of an undisputed power. When, therefore, an act of the Legislature of a state prescribes a regulation of the subject repugnant to and inconsistent with the regulation of Congress, the state law must give way, and this without regard to the source of power whence the state legislation derived its enactment." The same doctrine was applied in The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999, to traffic upon a navigable river within a state; the traffic being clearly interstate commerce.

By the Constitution of Colorado (section 10, art. 15, Const. 1876), it was provided: "No foreign corporation shall do any business in this state without having one or more known places of business and an author· ized agent or agents in the same upon whom process

may be served.'' Carrying the provision into effect, the Legislature of Colorado provided for the filing of a statement as is now required in this state, and penalizing the omission to file it. A nonresident corporation sold certain machinery to be delivered into Colorado. The Supreme Court of the United States, in Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, construed that a single transaction was not carrying on business in the state, but refrained from deciding whether the Colorado statute and Constitution were in that particular repugnant to the federal Constitution; but Mr. Justice Matthews, with whom Mr. Justice Blatchford concurred, observed: ''Whatever power may be conceded to a state to prescribe conditions on which foreign corporations may transact business within its limits, it cannot be admitted to extend so far as to prohibit or regulate commerce among the states, for that would be to invade the jurisdiction which, by the terms of the Constitution of the United States, is conferred exclusively upon Congress.''

A steamboat company whose vessels were engaged in interstate traffic was arraigned for failure to comply with the provisions of the Constitution of Louisiana, providing that no foreign corporation should do any business in that state without having one or more known places of business and an authorized agent in the state upon whom process could be served. It was held by the United States circuit court for the Eastern District of Louisiana, in New Orleans, etc., Packet Co. v. James, 32 Fed. 21, that the provision of the state Constitution, being an attempt on the part of the state to interpose a restriction on navigation, was in conflict with the act of Congress of

February 18, 1793, passed in pursuance of the Constitution of the United States, and was void.

In Tennessee a statute required foreign corporaions to register their charters there before doing business in the state. It was held, in Milan Milling, etc., Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135, upon the authority of Cooper Mfg. Co. v. Ferguson, supra, and expressly approving the language of Mr. Justice Matthews, quoted above, that it was incompetent for a state to regulate interstate commerce by such requirements.

A similar statute was held inoperative in its effect upon interstate commerce in McNaughton v. McGirl, 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610, and to the same effect is Cooke v. Rome Brick Co., 98 Ala. 409, 12 South. 918.

If the state can require the statement to be filed as a condition precedent to the right to navigate its waters by vessels hailing from the ports of another state, it is an additional regulation of the commerce carried by such vessels. It would impose, or might impose, additional burdens to the business of carrying such commerce, and in a measure regulate, if not prohibit, such traffic. If one state could impose one condition, other states might impose still others. It was just that state of confusion that the framers of the federal Constitution aimed to forestall. It was deemed that one system of regulation, free from local jealousies and rivalries, would redound most to the general welfare of the country, and the states consequently yielded to the federal government the exclusive jurisdiction over a subject which none of them was able to control, and upon which all might not be able to satisfactorily and justly agree. The police power of the state, wherein the health or lives

of its citizens may become involved, is not denied or shortened by the application of the doctrine discussed. On the contrary, it is fully conceded to exist; but, the police power, in so far as it is applied to mere matters of convenience, will not justify the interference by the state in a matter which it has ceded to the Union for its more satisfactory handling. Such interference, under the guise of an exercise of the police power, would be to nullify, by an implied reservation, a power expressly delegated.

We are of opinion that the indictment does not state an offense, and it should have been dismissed.

Judgment reversed, and cause remanded for proceedings consistent herewith.