# McGINIS ET AL. *v.* PEOPLE OF THE STATE OF CALIFORNIA.

## ERROR TO THE SUPERIOR COURT OF IMPERIAL COUNTY, STATE OF CALIFORNIA.

No. 133.   Argued April 26. 1918.—Decided May 20, 1918.

Upon the question whether opium was in transit through California to Mexico, or was in possession of defendants in violation of the state law, evidence that the purpose of a customs officer in weighing it at the boundary with the assistance of one of the defendants was to make out papers necessary for the exportation, and that defendants had authority from the Treasury Department to export, was competent in a prosecution for unlawful possession, and its exclusion by the state court denied a federal right of the defendants arising under the commerce clause.

Reversed.

THE case is stated in the opinion.

*Mr. William Sea, Jr.*, with whom *Mr. Frederick S. Tyler* was on the brief, for plaintiffs in error.

*Mr. James M. Oliver*, with whom *Mr. Thomas E. Haven* was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This case is here to review a judgment of the Superior Court modifying and affirming as modified a judgment pronounced against plaintiffs in error (whom we shall call defendants) after a verdict of a jury finding them guilty of violating a law of the State entitled "An Act to regulate the sale and use of poisons in the State of California and providing a penalty for the violation thereof." [Stats. 1913, c. 342, p. 692.]

The action was commenced by filing a verified complaint in a justice's court of the county charging them with having in their possession at Calexico in that county a preparation of opium containing more than two grains of opium to the fluid ounce, they, the defendants, not being within any of the exceptions of the statute.

Their trial was by jury which returned a verdict of guilty against them, and, after motion for new trial made upon the rulings hereinafter stated and denied, judgment was entered fining each of them in the sum of $300, the imprisonment to be suspended during good behavior if the fine be paid. It was further adjudged that until the fine be paid each should be imprisoned in the county jail one day for each dollar of the fine not exceeding 180 days.

On appeal to the Superior Court of the county the judgment was reversed as to imprisonment until the fine

be paid; in all else affirmed.  This writ of error was then allowed by the presiding judge.

The case is in narrow compass.  The charge was, as we have seen, that the defendants had opium in their possession in violation of the statute of the State.  The defense was,. among others, that the opium was in transit from St. Louis, Missouri, to Mexicali, Mexico.  The latter town and Calexico are really but one, having, however, different names and being in different countries—the international boundary being a street.

Necessarily the United States custom house is in Calexico, and to the practical singleness of the towns is added the fact that Wells, Fargo & Company, the carrier of the drug from St. Louis, has its terminal in Calexico and has the same office that the custom house broker has, whose relations with defendants were the subject of testimony and contention.

It is clear, however, that the drug was shipped from St. Louis and could have been carried by Wells, Fargo & Company no farther than Calexico and that the consignees could have paid—indeed, had to pay, and did pay—the express charges at that place, and could have received the drug upon payment.  It is in. dispute whether they did or whether one McCoy, the custom house broker, received it and weighed it, assisted by Young.  The weighing, it was testified, was made necessary by the requirement of the law of Mexico.  It was therefore a dispute of fact or inference in the case whether Young received the drug or McCoy did as a customs officer and that Young did no more than assist in the preparation of the shipment to Mexico, not participating in the possession.

In explanation of the situation Young testified that he did not remove the box (it was quite large and weighed, with contents, 72 pounds and, we may say in passing, was valued at $960.00) or take possession of it, arrange-

ments having been made with McCoy to have the box taken to Mexicali, he, McCoy, being a common carrier. And he testified that McCoy weighed its contents. He was then asked the question if he knew why McCoy weighed the contents. The question was objected to as immaterial on the ground that it made no difference what the purpose of weighing the contents was. The objection was sustained and counsel for Young replied, "We want to show that Mr. McCoy was to make out the American and Mexican papers for the exportation of the box to McGinis and Young at Mexicali." The question was then put whether McGinis and Young had authority to export the opium that was seized. Again the attorney for the State objected, saying, "It can have no bearing in this case. It is only a question of possession." The objection was sustained, to which it was replied by defendants' attorney, "If the court will not permit us to put in our defense as to having permission and authority to export the opium, cocaine and morphine mentioned in interstate and foreign commerce under the regulations of the Treasury Department of the United States, the defendants will rest."

A series of instructions were asked by defendants to be given which expressed the supremacy of Congress over interstate and foreign commerce and that therefore, even if defendants had control of the opium, if it was in transit or being transported from the United States to Mexico through a chain of carriers, then the defendants did not have possession of the opium in violation of the law of the State, and that it was the duty of the jury to acquit them. The instructions were refused.

It is clear, therefore, that defendants asserted rights under the commerce clause of the Constitution and that the evidence ruled out as immaterial was offered to sustain them. It was certainly pertinent and the circumstances of the case and the evidence made it competent. In other words, there was a dispute as to whether defendants had

taken possession of the opium—of which the jury were to be the judges, not the court—and whether the drug was in transit; and the conditions of transit were elements to be considered.

*The judgment of the Superior Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.*