## DAHNKE-WALKER MILLING COMPANY v. BONDURANT.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 30. Argued March 18, 1921; restored to docket for reargument June 6, 1921; reargued October 10, 1921.—Decided December 12, 1921.

1. A decision of a state court applying and enforcing a state statute of general scope against a particular transaction as to which there was, not merely a claim of a right or immunity under the Constitution, but a distinct and timely insistence that, if so applied to it, the statute was unconstitutional and void, necessarily affirms the validity of the statute when so applied, and the judgment based thereon is therefore reviewable by writ of error under § 237, Jud. Code, as amended by the Act of September 6, 1916. P. 288.

2. That the statute, in such case, is not claimed to be invalid *in toto* and for every purpose is immaterial, since a statute may be invalid as applied to one state of facts and yet valid as applied to another; and a litigant, moreover, can be heard to question a statute's validity only when and in so far as it is being, or is about to be, applied to his disadvantage. P. 289.

3. The right to review the validity of a state statute under Jud. Code, § 237, is independent of the grounds or reasons on which the state court upholds the validity of the statute. P. 289.

4. Where the state court denied enforceability to a contract made by a foreign corporation, upon the grounds that the contract was local in character and that the corporation had not complied with a statute conditioning the right of foreign corporations to do local business, although the corporation insisted that the contract was made in interstate commerce and that the statute, so applied, was therefore unconstitutional, *held* that the judgment was reviewable here by writ of error. P. 290.

5. Interstate commerce is not confined to transportation from one State to another, but comprehends all commercial intercourse between different States and all the component parts of that intercourse. P. 290.

6. Just as, where goods in one State are transported into another for purposes of sale, the interstate commerce embraces their sale after they reach their destination and while they are in the original packages, on the same principle, where goods are pur-

chased in one State for transportation to another, the commerce includes the purchase quite as much as it does the transportation. P. 290.

7. A corporation of one State may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is *pro tanto* void under the commerce clause. P. 291.

8. A Tennessee corporation, in pursuance of its practice of purchasing grain in Kentucky to be transported to and used in its Tennessee mill, made a contract for the purchase of wheat, to be delivered in Kentucky on the cars of a public carrier, intending to forward it as soon as delivery was made. *Held*, that the transaction was in interstate commerce, notwithstanding the contract was made and to be performed in Kentucky, and that the possibility that the purchaser might change its mind after delivery and sell the grain in Kentucky or consign it to some other place in that State, did not affect the essential character of the transaction. P. 292.

185 Ky. 386, reversed.

ERROR to a judgment of the Court of Appeals of Kentucky which affirmed a judgment of a court of first instance on a verdict directed for the defendant in an action for damages for breach of contract, brought by the plaintiff in error.

Mr. *John C. Doolan,* with whom Mr. *Joseph E. Robbins,* Mr. *R. G. Robbins,* Mr. *Edmund F. Trabue,* Mr. *Thomas Kennedy Helm* and Mr. *James P. Helm, Jr.,* were on the brief, for plaintiff in error.

While transportation is a part of commerce between the States, it is merely one of its elements. Either transportation or delivery may be the last of several steps in a transaction classed by this court as interstate commerce. In those cases where the seller goes into the buyer's State and negotiates the sale, transportation may precede delivery. On the other hand, where the buyer goes into the seller's State, transportation may follow delivery, as in the instant case. In either case, the parties may contract for delivery in the one State or the other, as they deem

proper, and this does not take away the interstate commerce feature of the transaction. *American Express Co.* v. *Iowa,* 196 U. S. 133; *Kinnear Manufacturing Co.* v. *Miner,* 89 Vt. 572. In *Gibbons* v. *Ogden,* 9 Wheat. 1, 189, 190, it was conceded that commerce between the States included negotiation, buying and selling, and it required that decision to establish the principle that power to regulate commerce also included the power to regulate transportation.

*Swift & Co.* v. *United States,* 196 U. S. 375, 398, 399; *Parsons-Willis Co.* v. *Stuart,* 182 Fed. 779, 783; *Kesterson* v. *La Moine Lumber Co.,* 139 Fed. 355, affirming 171 Fed. 980; *Parker-Harris Motor Co.* v. *Kissel Motor Car Co.,* 165 Wis. 518; *Kinnear Manufacturing Co.* v. *Miner,* 89 Vt. 572; *Livingstone Manufacturing Co.* v. *Rizzi Brothers,* 86 Vt. 419; *McNaughton Co.* v. *McGirl,* 20 Mont. 124; *Union Cotton Oil Co.* v. *Patterson,* 116 Miss. 802.

This court has repeatedly held that the intention of a shipper to have his shipment moved to an ultimate destination outside the State of its origin fixes the character of the movement as interstate commerce, even though such intention was not communicated to the carrier at the inception of the movement. *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission,* 219 U. S. 498. Especially is this true where, as a practical matter, the movement of the goods is obviously intended to go beyond the bounds of the State. *Texas & New Orleans R. R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111; *Ohio R. R. Commission* v. *Worthington,* 225 U. S. 101; *Philadelphia & Reading Ry. Co.* v. *Hancock,* 253 U. S. 284.

*Mr. M. Walton Hendry,* for defendant in error, submitted. *Mr. B. T. Davis* and *Mr. W. J. Webb* were also on the briefs.

A State may impose any condition it desires upon a foreign corporation for permitting it to engage in intrastate

business. *Commonwealth* v. *Read Phosphate Co.*, 113 Ky. 32; *Manufacturing Co.* v. *Ferguson,* 113 U. S. 727; *Insurance Co.* v. *Cravens,* 178 U. S. 389; *Hooper* v. *California,* 155 U. S. 648; *Waters Pierce Oil Co.* v. *Texas,* 177 U. S. 29.

The statute in question regulates transaction of business by foreign corporations within the State other than interstate commerce and is not in conflict with the Federal Constitution. *Knoxville Nursery Co.* v. *Commonwealth,* 108 Ky. 6; *Oliver* v. *Louisville Realty Co.,* 156 Ky. 628; *Van Meter* v. *Spurrier,* 94 Ky. 22; *Lindley* v. *Rutherford,* 17 B. Mon. 246. On the other hand the application of the statute to foreign corporations engaged strictly in interstate commerce with citizens of the State is void. *Louisville Trust Co.* v. *Bayer Co.,* 166 Ky. 746, and other cases.

Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced. *The Daniel Ball,* 10 Wall. 565. But this movement does not begin until the articles have been shipped or started for transportation from the one State to the other. *Coe* v. *Errol,* 116 U. S. 517, 525. This case, it seems to us, applies with great force to the facts here.

The contract between these parties was completed before the articles became a subject of transportation, and it is immaterial what may have been the thought or purpose of the plaintiff. *Gulf, Colorado & Santa Fe R. R. Co.* v. *Texas,* 204 U. S. 403; *United States* v. *Knight Co.,* 156 U. S. 1. Actual motion in transportation is essential. *Bennett* v. *American Express Co.,* 83 Me. 236.

Where a state statute applies to both intrastate and interstate shipments, but the shipment involved is wholly intrastate, this court will not consider the validity of the statute when applied to interstate shipments. 3 Foster's Fed. Prac., p. 2002; *Seaboard Air Line Ry.* v. *Seegers,* 207 U. S. 73.

The validity of a statute is not drawn into question every time a right claimed under it is controverted; nor is the validity of an authority drawn in question every time an act done by such authority is disputed. *Cook County v. Calumet Co.*, 138 U. S. 635; *Ferry v. King County*, 141 U. S. 668.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action to recover damages for the breach of a contract for the sale and delivery of a crop of wheat estimated at 14,000 bushels. The plaintiff was a Tennessee corporation engaged in operating a flour and feed mill at Union City, in that State. The defendant was a resident of Hickman, Kentucky, and extensively engaged in farming in that vicinity. They were the parties to the contract. It was made at Hickman and the wheat was to be delivered and paid ·for there. But the delivery was to be on board the cars of a common carrier, and the plaintiff intended to ship the wheat to its mill in Tennessee. A small part of the crop was delivered as agreed, but delivery of the rest was refused, although the plaintiff was prepared and expecting to receive and pay for it. A payment advanced on the crop more than covered what was delivered. At the time for delivery wheat had come to·be worth several cents per bushel more than the price fixed by the contract. The action was brought in a state court in Kentucky.

The principal defense interposed—the only one which we have occasion to notice—was to the effect that the plaintiff had not complied, as was the fact, with a statute of Kentucky (Ky. Stats. 1915, § 571) prescribing the conditions on which corporations of other States might do business in that State, and that the contract was therefore not enforceable. To this the plaintiff replied that the only business done by it in Kentucky consisted in purchasing

wheat and other grain in that State for immediate ship-
ment to its Tennessee mill and then shipping the same
there; that the contract in question was made in the
course of this business and with the purpose of forward-
ing the wheat to the mill as soon as it was delivered on
board the cars; that this transaction was in interstate
commerce and as to it the statute of Kentucky whose ap-
plication was invoked by the defendant was invalid be-
cause in conflict with the commerce clause of the Con-
stitution of the United States.

The cause was tried twice. On the first trial the plain-
tiff obtained a verdict and judgment, the court ruling that
the statute could not constitutionally be applied to the
transaction in question. But the Court of Appeals of the
State, while conceding the invalidity of the statute as
respects transactions in interstate commerce, held the
transaction in question was not in such commerce, de-
clared the statute valid and properly enforceable as to
that transaction and reversed the judgment with a direc-
tion for a new trial. That court proceeded on the theory
that, as the contract was made in Kentucky, related to
property then in that State and was to be wholly per-
formed therein, the transaction was strictly intrastate
and not within the reach or protection of the commerce
clause of the Constitution of the United States;—and
this although the wheat was to be delivered on board the
cars of a public carrier and the plaintiff intended to ship
it to Tennessee as soon as it was so delivered. 175 Ky.
774. On the second trial a verdict for the defendant was
directed because the plaintiff had not complied with the
statute. The jury conformed to the direction, judgment
was entered on the verdict and that judgment was
affirmed by the Court of Appeals on the authority of its
former decision. 185 Ky. 386.

The case is here on a writ of error and our jurisdiction
is challenged. The objection is not that we are without

power to review the judgment, but that it can be reviewed only on a writ of certiorari. The controlling statute is § 237 of the Judicial Code, as amended by the Act of September 6, 1916, c. 448, 39 Stat. 726. Besides confining our power of review in cases litigated in the state courts to those in which the decision of a federal question is involved, this jurisdictional section provides that the review in cases falling within certain classes may be on writ of error and in others on writ of certiorari, the distinguishing or dividing line being drawn according to the nature of the federal question and the way in which the state court decides it. Some cases may fall on both sides of the line, but with this we are not now concerned. Among those in which the review may be on writ of error the section includes—

" any suit . . . where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of their validity."

Among those in which the review may be on writ of certiorari are—

" any cause . . . where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is against their validity "; and .

" any cause . . . where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty or statute of, or commission held or authority exercised under the United States, and the decision is either in favor of or against the title, right, privilege, or immunity especially set up or claimed, by either party, under such Constitution, treaty, statute, commission, or authority."

In the state court the plaintiff did not simply claim a right or immunity under the Constitution of the United

States, but distinctly insisted that as to the transaction in question the Kentucky statute was void, and therefore unenforceable, because in conflict with the commerce clause of the Constitution. The court did not accede to the insistence, but applied and enforced the statute. Of course, that was an affirmation of its validity when so applied. *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 144; *McCullough* v. *Virginia,* 172 U. S. 102, 116–117; *General Oil Co.* v. *Crain,* 209 U. S. 211, 228; *Corn Products Refining Co.* v. *Eddy,* 249 U. S. 427, 432. And see *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, 3, 27. The case is therefore of the class described in the first of the provisions which we have quoted from the jurisdictional section. That the statute was not claimed to be invalid *in toto* and for every purpose does not matter. A statute may be invalid as applied to one state of facts and yet valid as applied to another. *Poindexter* v. *Greenhow,* 114 U. S. 270, 295; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Wynne,* 224 U. S. 354; *Kansas City Southern Ry. Co.* v. *Anderson,* 233 U. S. 325. Besides, a litigant can be heard to question a statute's validity only when and so far as it is being or is about to be applied to his disadvantage. *Yazoo & Mississippi Valley R. R. Co.* v. *Jackson Vinegar Co.,* 226 U. S. 217; *Jeffrey Manufacturing Co.* v. *Blagg,* 235 U. S. 571, 576. Neither does it matter on what ground the court upheld and enforced the statute. The provisions quoted from the jurisdictional section show that in cases where the validity of a state statute is drawn in question because of alleged repugnance to the Constitution the mode of review depends on the way in which the state court resolves the question. If it be resolved in favor of the validity of the statute the review may be on a writ of error; and if it be resolved against the validity the review can only be on writ of certiorari. The provisions take no account of the particular grounds or reasons on which the decision is put.

It is loosely said in one of the briefs for the plaintiff that the "sole question for decision" is whether the contract was a part of interstate commerce; but we attach no importance to this, because it not only is said in the same brief that the plaintiff "maintained in the state court, and it maintains here, that the Kentucky statute, as construed and applied in this case by the state court, is unconstitutional under the commerce clause," but much of that brief and of another is devoted to an effort to show the invalidity of the statute in that regard.

Our conclusion on the jurisdictional question is that, as the state court applied and enforced to the plaintiff's disadvantage a state statute which the plaintiff seasonably insisted as so applied and enforced was repugnant to the Constitution and void, the case is rightly here on writ of error. Like rulings on like grounds will be found in *Eureka Pipe Line Co.* v. *Hallanan, ante,* 265, and *United Fuel Gas Co.* v. *Hallanan, ante,* 277.

The commerce clause of the Constitution, Art. I, § 8, cl. 3, expressly commits to Congress and impliedly withholds from the several States the power to regulate commerce among the latter. Such commerce is not confined to transportation from one State to another, but comprehends all commercial intercourse between different States and all the component parts of that intercourse. Where goods in one State are transported into another for purposes of sale the commerce does not end with the transportation, but embraces as well the sale of the goods after they reach their destination and while they are in the original packages. *Brown* v. *Maryland,* 12 Wheat. 419, 446–447; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 519. On the same principle, where goods are purchased in one State for transportation to another the commerce includes the purchase quite as much as it does the transportation. *American Express Co.* v. *Iowa,* 196 U. S. 133, 143. This has been recognized in many deci-

sions construing the commerce clause.   Thus it was said in *Welton* v. *Missouri*, 91 U. S. 275, 280: "Commerce is a term of the largest import.   It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities."   In *Kidd* v. *Pearson*, 128 U. S. 1, 20, it was tersely said: "Buying and selling and the transportation incidental thereto constitute commerce."   In *United States* v. *E. C. Knight Co.*, 156 U. S. 1, 13, "contracts to buy, sell, or exchange goods to be transported among the several States" were declared "part of interstate trade or commerce."   And in *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 241, the court referred to the prior decisions as establishing that "interstate commerce consists of intercourse and traffic between the citizens or inhabitants of different States, and includes not only the transportation of persons and property and the navigation of public waters for that purpose, but also the purchase, sale and exchange of commodities."   In no case has the court made any distinction between buying and selling or between buying for transportation to another State and transporting for sale in another State.   Quite to the contrary, the import of the decisions has been that if the transportation was incidental to buying or selling it was not material whether it came first or last.

A corporation of one State may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause.   *Crutcher* v. *Kentucky*, 141 U. S. 47, 57; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 27; *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 112; *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197.

There is no controversy about the facts bearing on the character of the transaction in question.   It had been the

6267°—22——24

practice of the plaintiff to go into Kentucky to purchase grain to be transported to and used in its mill in Tennessee. On different occasions it had purchased from the defendant—at one time 13,000 bushels of corn. This contract was made in continuance of that practice, the plaintiff intending to forward the grain to its mill as soon as the delivery was made. In keeping with that purpose the delivery was to be on board the cars of a public carrier. Applying to these facts the principles before stated, we think the transaction was in interstate commerce. The state court, stressing the fact that the contract was made in Kentucky and was to be performed there, put aside the further facts that the delivery was to be on board the cars and that the plaintiff, in continuance of its prior practice, was purchasing the grain for shipment to its mill in Tennessee. We think the facts so neglected had a material bearing and should have been considered. They showed that what otherwise seemed an intrastate transaction was a part of interstate commerce. See *Swift & Co.* v. *United States,* 196 U. S. 375, 398; *United States* v. *Reading Co.,* 226 U. S. 324, 367; *Pennsylvania R. R. Co.* v. *Clark Brothers Coal Mining Co.,* 238 U. S. 456–468; *Eureka Pipe Line Co.* v. *Hallanan, supra.* The state court also attached some importance to the fact that after the grain was delivered on the cars the plaintiff might have changed its mind and have sold the grain at the place of delivery or have shipped it to another point in Kentucky. No doubt this was possible, but it also was improbable. With equal basis it could be said that a shipment of merchandise billed to a point beyond the State of its origin might be halted by the shipper in the exercise of the right of stoppage *in transitu* before it got out of that State. The essential character of the transaction as otherwise fixed is not changed by a mere possibility of that sort. See *United Fuel Gas Co.* v. *Hallanan, supra.*

For these reasons we are of opinion that the transaction was a part of interstate commerce, in which the plaintiff

lawfully could engage without any permission from the State of Kentucky, and that the statute in question, which concededly imposed burdensome conditions, was as to that transaction invalid because repugnant to the commerce clause.

*Judgment reversed.*

Mr. Justice Brandeis, with whom concurred Mr. Justice Clarke, dissenting.

The writ of error should, in my opinion, be dismissed. The obstacle to our assuming jurisdiction is not procedural; as it is in those cases where a plaintiff fails because the claim was not made seasonably or in appropriate form.[1] Here, the obstacle is the nature of the constitutional question sought to be reviewed. It involves a state statute. But the validity of the statute is not actually drawn in question. Only the propriety of the application or use of the statute is questioned. Since the Act of September 6, 1916, c. 448, § 2, 39 Stat. 726, such questions are not reviewable in this court as of right. They may now be reviewed only in the court's discretion; and exercise of the discretion must be invoked by a petition for a writ of certiorari.

This court has now, as it had before that act, jurisdiction under § 237 of the Judicial Code to review a final judgment of the highest court of a State whenever a right under the Federal Constitution duly claimed has been denied in applying a state statute. And in no case involving a state statute can jurisdiction attach unless the statute has been applied. For unless it was applied, there could not have been an invasion of the party's constitutional right; and unless there was such invasion the con-

---

[1] See *Jett Bros. Co.* v. *Carrollton,* 252 U. S. 1, 6; *Mergenthaler Linotype Co.* v. *Davis,* 251 U. S. 256, 258; *Godchaux Co.* v. *Estopinal,* 251 U. S. 179.

stitutional question presented, whatever its nature, would
be moot.   But the Act of 1916 made the nature of the con-
stitutional question raised in applying the statute a mat-
ter of importance.   If the question is a denial of the power
of the legislature to enact the statute as construed, a re-
view may be had as of right.   If the question concerns
merely the propriety of the particular use of the statute
or of the manner of applying or administering it, the re-
view may be had only in this court's discretion.   The clas-
sification thus introduced rests upon broad considerations
of policy.   The steady increase of the business of this
court had made it necessary to limit the appellate jurisdic-
tion in cases arising under § 237.   To this end Congress
determined in 1916 that even cases involving constitu-
tional questions should be reviewed here only where the
public interest appeared to demand it.   Congress left
parties a review as of right where the validity of a state
statute had been drawn in question; because the decision
of such a question is usually a matter of general interest.
But whether a valid state statute has in a particular case
been so used as to violate a constitutional guaranty is or-
dinarily a matter of merely private interest.   Hence, Con-
gress provided that where the validity of the statute is not
assailed, the denial of a claim that in applying it a right,
privilege or immunity had been violated, should not be
reviewed, unless this court, in its discretion to be exercised
upon petition for a writ of certiorari, should direct the
review.   That is, Congress treated a right, privilege or im-
munity claimed to have been violated by the courts' erro-
neously applying a confessedly valid statute. to the par-
ticular facts of a case, just as it treated a claim that the
right, privilege or immunity had been violated by a deci-
sion erroneous in some other respect.

In considering whether in this case the validity of the
state statute was drawn in question, it is necessary to bear
in mind that, in every case involving a statute, the state

court must perform (aside from the consideration of any constitutional questions) two functions essentially different. First the court must construe the statute; that is, determine its meaning and scope. Then it must apply the statute, as so construed, to the facts of the case.[1] In this case the construction of the statute was never in controversy. It had been settled by earlier decisions that the statute referred only to corporations when transacting business in intrastate commerce. Here the only controversy concerned the character of the particular transaction to which defendant sought to have the statute applied. Was it interstate commerce? If so, the transaction was not within the scope of the statute. To decide that controversy two determinations had to be made. One was of fact: whether the wheat was sold and bought for shipment to Tennessee. The other was of law: whether the fact that the wheat was so sold and bought makes the transaction one in interstate commerce. Did that controversy over the character of the commerce draw in question the validity of the statute or did it draw in question merely the propriety, that is, the constitutionality, of its application? What the character of the controversy was must be decided upon the record presented here.

The validity of a statute, as was said in *Baltimore & Potomac R. R. Co.* v. *Hopkins,* 130 U. S. 210, 224, is drawn in question whenever the power to enact it " as it is by its terms, or is made to read by construction, is fairly open to denial and denied." The power to enact

---

[1] The word " apply " is used in connection with statutes in two senses. When construing a statute, in describing the class of persons, things or functions which are within its scope; as that the statute does not " apply " to transactions in interstate commerce. When discussing the use made of a statute, in referring to the process by which the statute is made operative; as where the jury is told to " apply " the statute of limitation if they find that the cause of action arose before a given date. In this opinion it is used in the latter sense.

§ 571, Kentucky Statutes, as construed by the highest court of the State, was not fairly open to denial; for the statute was construed as affecting only intrastate transactions of foreign corporations. See *International Textbook Co.* v. *Pigg,* 217 U. S. 91; *Hooper* v. *California,* 155 U. S. 648. A writ of error which rested solely upon the challenge of the statute so construed would have presented no substantial claim and must have been dismissed as frivolous. *Equitable Life Assurance Society* v. *Brown,* 187 U. S. 308, 311; *Sugarman* v. *United States,* 249 U. S. 182, 184. Compare *Blumenstock Bros. Advertising Agency* v. *Curtis Publishing Co.,* 252 U. S. 436, 441. Nor was the power to enact § 571 as construed actually denied. The question decided below and presented for review here is merely whether this valid statute has been so used—not construed—as to deny to the plaintiff a privilege or immunity guaranteed by the Federal Constitution.

That the character of the commerce—and not the validity of the statute—was the only question actually in controversy and is the only question which the plaintiff actually seeks to present for review, appears from the following statement in its brief filed in this court, as well as from the supporting argument:

" The sole question for decision by this court is whether the contract sued on is a part of *inter*state commerce or purely a transaction in *intra*state commerce. If this court should conclude that the contract is *any part* of interstate commerce, the judgment of the Kentucky Court of Appeals must be reversed; otherwise, it should be affirmed."

A party's conception or characterization of the question presented by the record is, of course, not conclusive of his right to a review. The right is determined by the record. But in this case the record confirms the plaintiff's conception of the question submitted for review. The judgment of the Court of Appeals brought before us is that of October 17, 1919, which affirmed the judgment below en-

tered after the second trial before a jury.  In 1917 the
Court of Appeals, in delivering its first opinion which
directed the second trial, 175 Ky. 774, said:

" This court has heretofore held that section 571, *supra,*
does not have any application to a foreign corporation,
which is engaged strictly in interstate commerce with
citizens of this State. . . .  Hence, if the contract
sought to be enforced was an interstate commerce trans-
action, the failure to comply with section 571, *supra,*
would not affect the right of appellee to sue and recover
upon its contract, but if it was an intrastate business, the
failure to have complied with section 571, *supra,* is fatal
to appellee's right of recovery. . . .  So the question for
decision is, was the contract between appellant and ap-
pellee one which is protected by article I, chapter 8, para-
graph 3, of the Federal Constitution, from regulation by
the State of Kentucky, as being a transaction in interstate
commerce? "

Since 1903 it had been the settled law of the State, as
then declared by its highest court, that § 571 did not
affect transactions in interstate commerce.  *Common-
wealth* v. *Hogan, McMorrow & Tieke Co.,* 74 S. W. 737.[1]
Thus, before this action was begun, it was the settled law
that such transactions of foreign corporations were not
within the scope of the statute.  In 1915, after this action
was begun but before the first trial, that rule was again
applied in *Louisville Trust Co.* v. *Bayer Co.,* 166 Ky. 744,
746.  When, therefore. this case was before the Circuit
Court at the seco d trial and when it was before the
Court of Appeals for the second time, there clearly was
no actual controversy over the validity of the statute.  It

---

[1] See also *Ryman Steamboat Line Co.* v. *Commonwealth,* 125 Ky.
253; *Commonwealth* v. *Chattanooga Implement & Mfg. Co.,* 126 Ky.
636; *Commonwealth* v. *Eclipse Hay Press Co.,* 104 S. W. 224; *Three
States Buggy & Implement Co.* v. *Commonwealth,* 105 S. W. 971.

is true that plaintiff had used in pleading language which imported not only a claim of immunity because the transaction was interstate commerce but also an assertion that § 571, if construed so as to affect it, was invalid. But a review by this court as of right cannot be acquired by inaccurately describing, or by disguising, the nature of the constitutional claim actually made. Nor could there have been a conscious purpose to do this when the reply was filed. In 1915 the exact nature of the claim under the Constitution was not material. At that time the denial of any claim of constitutional right, whatever its nature, still gave the party a review in this court as of right. It was the Act of September 6, 1916, which made the division of cases involving constitutional questions into two classes a matter of substance.

If jurisdiction upon writ of error can be obtained by the mere claim in words that a state statute is invalid, if so construed as to " apply " to a given state of facts, the right to a review will depend, in large classes of cases, not upon the nature of the constitutional question involved but upon the skill of counsel. The result would be particularly regrettable, because the decision of such cases often depends not upon the determination of important questions of law (which should in the main engage the attention of this court), but upon the appreciation of evidence frequently voluminous. Thus, in proceedings under State Workmen's Compensation Acts or State Employers' Liability Acts, the question whether a carrier is liable depends often upon the question whether at the time of the accident the employee was engaged in interstate or in intrastate commerce. Since the Act of September 6, 1916, certiorari is the proper means of reviewing a judgment involving that question. *Southern Pacific Co.* v. *Industrial Accident Commission,* 251 U. S. 259. If the rule now insisted upon obtains, the carrier could in every such case secure a review on writ of error by simply claim-

ing that the state statute is invalid under the commerce clause if construed so as to apply to the special facts of the case. Yet it was preëminently the decision of questions like these from which Congress sought to relieve this court by the Act of September 6, 1916.[1] Likewise, in cases involving state taxation the validity of the tax often depends upon the question whether the specific thing taxed was property within or property without the taxing State—a question which, as held in *Dana v. Dana,* 250 U. S. 220, and *Citizens National Bank v. Durr, ante,* 99, can be reviewed here only on writ of certiorari. If the rule now insisted upon should prevail, jurisdiction in such cases could be secured on writ of error by the simple device of claiming that the taxing statute is invalid under the Fourteenth Amendment if construed so as to apply to the specific property involved. So, in suits in state courts against foreign corporations, the question whether there is jurisdiction depends often upon the question whether the corporation was doing business within the State and had expressly or impliedly consented to be sued there.[2] The correctness of the decision of a state court of this question has been held to be reviewable here only upon certiorari, *Philadelphia & Reading Coal & Iron Co. v. Gilbert,* 245 U. S. 162. But if the rule now insisted upon

---

[1] See Report of Judiciary Committee, House Doc. No. 794, 64th Cong., 1st sess., House Rep. vol. 3. Of the cases on the docket for the preceding term of this court 37 presented the question whether the employee was engaged in interstate or intrastate commerce. See *New York Central R. R. Co. v. Winfield,* 244 U. S. 147, 168, note 1; *St. Louis, San Francisco & Texas Ry. Co. v. Seale,* 229 U. S. 156; *Philadelphia & Reading Ry. Co. v. Hancock,* 253 U. S. 284; *Philadelphia & Reading Ry. Co. v. Di Donato,* 256 U. S. 327; *Philadelphia & Reading Ry. Co. v. Polk,* 256 U. S. 332.

[2] See e. g., *Philadelphia & Reading Ry. Co. v. McKibbin,* 243 U. S. 264; *People's Tobacco Co. v. American Tobacco Co.,* 246 U. S. 79; *Chipman, Limited, v. Jeffery Co.,* 251 U. S. 373, as illustrating the issues involved.

should prevail, jurisdiction on writ of error may be secured by simply making the claim that the state statute is invalid under the Fourteenth Amendment if construed so as to apply to the facts of the case.

Plaintiff relies upon a number of cases, assumed to be similar, in which, after the Act of September 6, 1916, jurisdiction was (mainly without discussion) taken on writ of error. They are not in point. In some of them orders of railroad commissions were challenged as violating the Constitution.[1] Such an order, unlike decisions of courts, " being legislative in its nature and made by an instrumentality of the State, is a state law within the meaning of the Constitution of the United States and the laws of Congress regulating our jurisdiction." *Lake Erie & Western R. R. Co.* v. *State Public Utilities Commission,* 249 U. S. 422, 424. In each of these cases, therefore, attacking the validity of the order was drawing in question the validity of a law. In others the validity of state statutes as construed was actually drawn in question.[2] *Mc-Ginis* v. *California,* 247 U. S. 91, and *McGinis* v. *Cali-*

---

[1] *Union Pacific R. R. Co.* v. *Public Service Commission,* 248 U. S. 67; *Lake Erie & Western R. R. Co.* v. *State Public Utilities Commission,* 249 U. S. 422; *Chicago & Northwestern Ry. Co.* v. *Ochs,* 249 U. S. 416; *Pennsylvania R. R. Co.* v. *Public Service Commission,* 250 U. S. 566, and *St. Louis & San Francisco Ry. Co.* v. *Public Service Commission,* 254 U. S. 535.

[2] *Union Tank Line Co.* v. *Wright,* 249 U. S. 275; *Corn Products Refining Co.* v. *Eddy,* 249 U. S. 427; *Chalker* v. *Birmingham & Northwestern Ry. Co.,* 249 U. S. 522; *New Orleans & Northeastern R. R. Co.* v. *Scarlet,* 249 U. S. 528; *Yazoo & Mississippi Valley R. R. Co.* v. *Mullins,* 249 U. S. 531; *Kenney* v. *Supreme Lodge,* 252 U. S. 411; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554; and *Merchants' National Bank* v. *Richmond,* 256 U. S. 635. In *Eureka Pipe Line Co.* v. *Hallanan,* ante, 265, and *United Fuel Gas Co.* v. *Hallanan,* ante, 277, it was assumed (in my opinion erroneously) that the situation presented was similar in this respect to that in *Merchants' National Bank* v. *Richmond, supra.*

*fornia,* 247 U. S. 95, involved, like the case at bar, the determination whether the transaction in question was one in interstate or foreign commerce. Although they did not draw in question the validity of any statute, this court properly entertained the writ of error in each of those cases, because, as the original records disclose, the judgment was of a date so early as not to come within the Act of September 6, 1916. It is true that § 237 of the Judicial Code, which reënacted § 709 of the Revised Statutes, and § 2 of the Act of February 5, 1867, c. 28, 14 Stat. 385, 386, used, in defining the jurisdiction of this court, the phrase " where is drawn in question the validity of a statute." But under none of these acts could there be occasion for deciding the question here under discussion; for each contained also the more comprehensive provision giving jurisdiction where any right, title, privilege or immunity claimed under the Constitution had been denied. And under § 25 of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 73, 85, which embodied the law prior to 1867, the conditions were substantially the same. Hence little help can be derived from the consideration of cases involving judgments entered before the Act of September 6, 1916, became effective.[1]

---

[1] Thus comprehensive constitutional claims were made the basis of the writ of error in *Coe* v. *Errol,* 116 U. S. 517, 520, and in *Kelley* v. *Rhoads,* 188 U. S. 1, 4, which presented the question, whether the property taxed was in interstate commerce and hence exempt from taxation under a general law; and in *Vicksburg, Shreveport & Pacific R. R. Co.* v. *Dennis,* 116 U. S. 665, 667, which presented the question whether the charter of a railroad granted tax exemption so that a later general tax law ·if applied to it would impair its contract rights; and in *Delaware, Lackawanna & Western R. R. Co.* v. *Pennsylvania,* 198 U. S. 341, 352, which presented the question whether the tax appraisal for the purpose of fixing the value of the capital stock could include tangible personal property permanently located outside the State. (See original records.) Compare *Planters' Bank* v. *Sharp,* 6 How. 301, 307.

Nor can we be aided in construing the Act of September 6, 1916, by considering cases arising under § 238 of the Judicial Code (reënacting § 5 of the Act of March 3, 1891, c. 517, 26 Stat. 826, 827, as amended). For the third clause thereof empowers this court to review by writ of error or appeal decisions of United States District Courts " in any case that involves the construction or application of the Constitution of the United States." This comprehensive provision renders immaterial in this connection the nature of the constitutional question. The specification in the fourth clause, of cases " in which the constitutionality of any law of the United States . . . is drawn in question," and in the fifth clause, of cases " in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States," adds nothing. Nor can we derive aid from cases involving review by this court of cases coming from the Circuit Court of Appeals under § 241 of the Judicial Code (reënacting § 6 of the act, 26 Stat. 826, 828). For under it the right of review where available exists regardless of the nature of the constitutional question.

But cases coming from the District of Columbia and from the Territories in which a review by this court was sought (under the Act of March 3, 1885, c. 355, 23 Stat. 443, and under § 250 of the Judicial Code) on the ground that the validity of an authority or of a statute was drawn in question, are persuasive as to the meaning of the phrase drawing in question the validity of a statute, as used in the Act of 1916. And they were recognized in *Ireland* v. *Woods,* 246 U. S. 323, 329, as controlling. Thus *United States ex rel. Champion Lumber Co.* v. *Fisher,* 227 U. S. 445, and *United States ex rel. Foreman* v. *Meyer,* 227 U. S. 452, hold that the validity of an authority is not drawn in question where the controversy is confined to determining whether the facts upon which a person can

exercise that authority do or do not exist; and the writs of error were dismissed because the validity was not " drawn in question " in the sense in which that phrase is used in the statute, that is, brought forward or made a ground of decision.[1]

· It is, of course, permissible to make the claim that a statute is invalid and also that as administered or applied it violates a right or immunity under the Constitution. In such a case the writ of error is clearly appropriate. But in the case at bar there never has been a real claim that the statute as construed by the highest court of Kentucky is invalid. The actual claim was and is that a confessedly valid statute was misapplied and, thereby, a constitutional guaranty was violated. A review as of right is not to be obtained by misdescribing the question in controversy. When Congress declared that there should be a review as of right only where the validity of the statute was drawn in question, it did not provide for securing the right by the use of a form of words—a potent formula which should operate as an " Open Sesame." It was dealing with substance. It legislated to relieve an overburdened court.

[1] Compare also *Snow* v. *United States*, 118 U. S. 346, 353; *Baltimore & Potomac R. R. Co.* v. *Hopkins*, 130 U. S. 210; *District of Columbia* v. *Gannon*, 130 U. S. 227, 229; *United States* v. *Lynch*, 137 U. S. 280; *Ferry* v. *King County*, 141 U. S. 668; *South Carolina* v. *Seymour*, 153 U. S. 353; *Linford* v. *Ellison*, 155 U. S. 503; *Taylor* v. *Taft*, 203 U. S. 461; where the validity of an authority or of a statute was held not to have been drawn in question; with *Clayton* v. *Utah Territory*, 132 U. S. 632; *Clough* v. *Curtis*, 134 U. S. 361, 369; *Steinmetz* v. *Allen*, 192 U. S. 543; *McLean & Co.* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 38, 47; *Smoot* v. *Heyl*, 227 U. S. 518, 522; where such was held to have been drawn in question.