197 So. 38

### SIMONETTI BROS. PRODUCE CO. v. PETER FOX BREWING CO.

6 Div. 705.

Supreme Court of Alabama.

June 29, 1940.

Leader, Hill, Tenenbaum & Seedman, of Birmingham, for appellants.

Ritter, Wynn & Carmichael and Victor H. Smith, all of Birmingham, for appellee.

KNIGHT, Justice.

Action brought by appellee, Peter Fox Brewing Company, against Simonetti Brothers' Produce Company, a partnership, and against the individual members of said partnership.

The complaint consists of four counts: Counts 1, 2 and 3 are on the common counts, while count 4 is upon a written contract of guaranty executed by the defendants to the plaintiff, whereby the defendants, in consideration of the sale and delivery of certain merchandise by the plaintiff to Burgomaster Distributing Company, agreed to pay the plaintiff a certain named sum of money. In said count four plaintiff acknowledged the payment to it of $1,705.62 on said undertaking, but claimed a balance due and still owing thereon of $509.30.

The pleadings were in short by consent the general issue: that the plaintiff "is a foreign corporation, not qualified to do business in Alabama, and that the contract was made in Alabama:" and with leave to give in evidence any matter, which, if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, with like leave to plaintiff to reply.

The cause was tried by the court without a jury upon an agreed statement of facts. Upon the agreed facts, the court rendered judgment for the plaintiff for the sum of $562.77, and it is from this judgment the appellants prosecute this appeal.

The facts as agreed upon may be fairly summarized as follows:

The plaintiff—appellee—at the time of the execution of the contract of guaranty, and prior thereto, was, and still is, a foreign corporation, having its principal place of business in Chicago, Ill., and has never complied with the laws of this state with reference to transaction of business here by a foreign corporation.

That in June, 1937, the plaintiff received an order from a concern at Birmingham, Alabama, known as Vulcan Distributing Company for a carload of beer at a price of, approximately, $2,214.92; that the said carload of beer was shipped "by railroad" to said Vulcan Distributing Company, the shipment being consigned to the plaintiff, and a sight draft was drawn by the plaintiff on said Vulcan Distributing Company and attached to the bill of lading for the car of beer which had been issued by the common carrier, and this draft, with bill of lading attached, was sent by plaintiff to a bank in Birmingham, Alabama, for collection; that the said carload of beer so shipped by plaintiff arrived in Birmingham, Alabama, within a few days after its shipment from Chicago, and the Vulcan Distributing Company was unable to pay the amount of the draft and the car was held by the common carrier and none of its contents removed. A few days later plaintiff sent one of its salesmen to Birmingham to see if the said Vulcan Distributing Company could or would pay the draft and receive the shipment, and when the salesman arrived in Birmingham, he learned that the said Vulcan Distributing Company would be unable to pay for the beer; that after ascertaining that said Vulcan Distributing Company would be unable to take up the draft and bill of lading, the plaintiff's said representative went to the defendants' office for the purpose of trying to sell the beer to defendant at the same price which it had been sold to the Vulcan Distributing Company, and the defendants then made a counter proposition which plaintiff's representative advised the defendants he had no authority to accept without conferring with plaintiff's office in Chicago; that defendants advised plaintiff's representative they could not handle the beer themselves but suggested that plaintiff sell it to Burgomaster Distributing Company, and that defendants would guarantee the payment for the beer if so sold. The plaintiff's representative then telephoned plaintiff's office in Chicago, and reported to defendants that he had submitted the proposition to plaintiff for such sale to the Burgomaster Distributing Company upon the guaranty of payment by defendants, and that plaintiff would accept same, said beer being at that time in the possession of the common car-

rier on its tracks and in the original car in which it had been shipped; whereupon the contract of guaranty was prepared by plaintiff's representative and executed by the defendants. The beer was then unloaded from the car by the Burgomaster Distributing Company but was subsequently taken possession of by defendants who agreed to pay the sale price therefor, and did actually pay for a greater part of the account; but that $509.30, with interest, still remained unpaid; that the defendants were informed that the beer would be delivered to the Burgomaster Distributing Company in reliance upon the said guaranty; that the defendants had been notified before the commencement of the suit that the purchase price of the beer had not been fully paid, and demand was made for the balance due.

It was agreed that the plaintiff "has and did have prior to the sale or attempted sale * * * a permit from the Alabama Alcoholic Beverage Control Board or Commission to sell beer in this state."

In the outset let it be understood that no part of the taxing power of the state is involved in this litigation.

All of the appellants' assignments of error are based upon the same proposition of law, and, of course, are based upon "the same factual situation."

. It is contended by the appellants, defendants; (a) that the contract of guaranty entered into between the plaintiff and the defendants was void by reason of the fact the plaintiff, at the time, was a foreign corporation not qualified to do business in the State of Alabama; (b) that the contract of guaranty cannot be the subject of interstate commerce; (c) because the contract of sale between plaintiff and the Burgomaster Distributing Company was an intrastate and not an interstate sale; (c) that the Alabama statutes prescribing terms and conditions on which a foreign corporation may do business in Alabama do not constitute an unlawful burden on interstate commerce; and (e) that under the statutes and Constitution of the United States intoxicating liquors are removed from the protection of the "commerce clause" of the United States Constitution. Article 1, § 8, cl. 3.

It is the theory of the plaintiff that the entire transaction was one in interstate commerce; that the original purchaser— the Vulcan Distributing Company—being unable to pay the draft and take over the bill of lading and the beer, the plaintiff had the right to complete the interstate transaction by selling the entire car as it stood on the tracks of the railroad company to any other satisfactory purchaser.

We are in accord with the lower court in its statement that the sole question presented, under the agreed statement of facts, is whether or not the sale and guaranty agreement were void as being in violation of Sections 7208, 7209, 7220, Code; and Section 232 of the Alabama Constitution.

 Of course it must be conceded that a foreign corporation which has not complied with the requirements of Section 232 of the Constitution and of Sections 7208 and 7220 of the Code is prohibited from doing business in this state, that means from engaging in intrastate, as distinguished from interstate, business. Of course, it is not within the power of the state to prohibit foreign corporations from doing an interstate business. That power rests solely with the Congress.

In the case of Leisy & Co. v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 683, 34 L.Ed. 128, it was held in an opinion by Chief Justice Fuller: "The power vested in congress 'to regulate commerce with foreign nations, and among the several states, and with the Indian tribes,' is the power to prescribe the rule by which that commerce is to be governed, and is a power complete in itself, acknowledging no limitations other than those prescribed in the constitution. It is co-extensive with the subject on which it acts, and cannot be stopped at the exterior boundary of a state, but must enter its interior, and must be capable of authorizing the disposition of those articles which it introduces, so that they may become mingled with the common mass of property within the territory entered. Gibbons v. Ogden [22 U.S. 1], 9 Wheat. 1 [6 L.Ed. 23]."

In the case of Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 108, 66 L.Ed. 239, in an opinion by Mr. Justice Van Devanter, it was held: "The commerce clause of the Constitution (article 1, § 8, cl. 3) expressly commits to Congress and impliedly withholds from the several states the power to regulate commerce among the latter. Such commerce is not confined to transportation from one state to another, but comprehends all com-

mercial intercourse between different states and all the component parts of that intercourse. Where goods in one state are transported into another for purposes of sale, the commerce does not end with the transportation, but embraces as well the sale of the goods after they reach their destination and while they are in the original packages. Brown v. Maryland, 12 Wheat. 419, 446–447, 6 L.Ed. 678 [688, 689]; American Steel & Wire Co. v. Speed, 192 U.S. 500, 519, 24 S.Ct. 365, 48 L.Ed. 538 [546]. On the same principle, where goods are purchased in one state for transportation to another, the commerce includes the purchase quite as much as it does the transportation. American Exp. Co. v. Iowa, 196 U.S. 133, 143, 25 S.Ct.Rep. 182, 49 L.Ed. 417 [422]. This has been recognized in many decisions construing the commerce clause. * *

"A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause. Crutcher v. Kentucky, 141 U.S. 47, 57, 11 S.Ct. 851, 35 L.Ed. 649 [652]; Western U. Teleg. Co. v. Kansas, 216 U.S. 1, 27, 30 S.Ct. 190, 54 L.Ed. 355 [366]; International Textbook Co. v. Pigg, 217 U.S. 91, 112, 30 S.Ct. 481, 54 L.Ed. 678 [687], 27 L.R.A.(N.S.) 493, 18 Ann.Cas. 1103; Sioux Remedy Co. v. Cope, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193."

In Dozier v. State of Alabama, 218 U.S. 124, 30 S.Ct. 649, 650, 54 L.Ed. 965, 967, 28 L.R.A.,N.S., 264, reversing Dozier v. State, 154 Ala. 83, 46 So. 9, 129 Am.St.Rep. 51, the court said: "It is true that the customer was not bound to take the frame unless he saw fit, and that the sale of it took place wholly within the state of Alabama, if a sale was made. But, as was hinted in Rearick v. Pennsylvania, 203 U. S. 507, 512, 27 S.Ct. 159, 51 L. Ed. 295, 297, what is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed. * * *"

In our case of Holman v. Durham Buggy Co., 200 Ala. 556, 76 So. 914, 915, it was observed in the opinion written by Judge Somerville: "It has been several times held that the lending of money in Alabama by a foreign corporation is a business transaction within the inhibition of the state laws referred to, and that a mortgage security therefor, on local property is not valid without precompliance with the laws. Farrior v. New England M. S. Co., 88 Ala. 275, 7 So. 200; State v. Bristol Sav. Bank, 108 Ala. 3, 18 So. 533, 54 Am.St.Rep. 141. But in those cases the invalidity of the security was clearly predicated upon the unlawful character of the business transaction—a direct exercise of corporate function—of which it formed a part. * * * On the other hand, our decisions have made it perfectly clear that the mere collection of validly created debts —and, a fortiori, their securement by note or otherwise—though within the general corporate powers, is not the transaction of corporate business within the meaning of our inhibitory laws. Beard v. Union, etc., Pub. Co., 71 Ala. 60; Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 So. 941, 25 L.R.A. 543; Heflin Co. v. Hilton, 124 Ala. [365], 367, 27 So. 301; State v. Anniston Rolling Mills, 125 Ala. 121, 27 So. 921. See, also, 19 Cyc. 1280, I, and cases cited."

█ We are of the opinion, and so hold, that the sale of the carload of beer to Burgomaster Distributing Company, and the execution of the guaranty contract, under the facts in this case, were but incident to, and a component part of the sale of an interstate shipment in the original package and do not fall within the inhibition of Section 232 of the Alabama Constitution, nor within the provisions of Sections 7208–7220 of the Code. We, therefore, hold said sale to be valid, and the contract of guaranty to be legal and binding. Citizens' Nat'l Bank v. Buckheit, 14 Ala.App. 511, 71 So. 82, certiorari denied, Ex parte Buckheit, 196 Ala. 700, 72 So. 1019.

There is not in the evidence the slightest suggestion of any intent on the part of plaintiff to evade the state laws in this case. The evidence shows that the plaintiff while engaged in interstate commerce had secured a permit from the Alabama Alcoholic Beverage Control Board to make shipments of beer in Alabama.

The judgment of the Circuit Court of Jefferson County being in harmony with the foregoing opinion, it is due to be affirmed. It is so ordered.

Affirmed.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.