### UNITED STATES v. SANDERS.

No. 4918–Civil.

United States District Court, W. D. Oklahoma.

July 27, 1951.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., for plaintiff.

Charles E. Dierker, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

This is a criminal contempt proceeding under Section 302(b) of the Federal Food, Drug, and Cosmetic Act of June 25, 1938, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq. Judgment for defendant and contempt order denied.

Defendant, Tom G. Sanders, a resident of the State of Oklahoma, was perpetually enjoined by this court under authority of Section 302(a) of the Act on October 17, 1950, from "directly or indirectly introducing or causing to be introduced, and delivering or causing to be delivered, for introduction into interstate commerce, in violation of 21 U.S.C.A. § 331(a), a drug which is misbranded within the meaning of 21 U.S.C.A. §§ 352(b)(1), 352(b)(2), 352(e)(2) or 352(f)(1)." The injunction was not contested by defendant, and no testimony was heard. This court determined that defendant was engaged in interstate commerce, inasmuch as he had employed "runners" or "drummers" who would go into other states and take orders for the drug manufactured by defendant.

Upon issuance of the injunction order, defendant returned to his home at Wanette, Oklahoma, and continued to distribute and sell his "home remedy" in the same manner as before, with the exception that he no longer employed "runners," but merely sold the drug to such persons as personally came

to his home and purchased the product there. Many of these customers were from out-of-state, and defendant was fully aware of this fact. The Government thereupon requested this court to cite the defendant for criminal contempt based upon an alleged violation of the injunction order. Defendant acknowledges and stipulates that the drug is misbranded as provided in the Act, and as alleged by the Government, but denies that the activities in which he is presently engaged constitute an introduction of the drug into interstate commerce, or a delivery of the drug for introduction into interstate commerce, as prohibited by this court's injunction order.

It therefore appears that the determinative issue before this court is whether or not defendant, by selling his product to persons whom he knew to be residents of another state, but who personally came to defendant's home to make their purchases, was engaged in interstate commerce. So far as this court can determine, this is a matter of first impression, and one upon which there are no cases directly in point.

At the time of the adoption of the United States Constitution, the "Commerce power" was relatively unimportant. However, it has so expanded in significance and application that, today, it is certainly one of the most powerful means of Federal regulation. There exists considerable controversy as to whether this expanded application is desirable for the protection of the nation's welfare, or whether it is totally unwarranted and creates an invasion of the regulatory powers of the sovereign states. This difference of opinion is a political issue which is not before this court for determination. We have only to determine whether, under this unique factual situation, the defendant has engaged in interstate commerce.

An accurate, all-inclusive definition of interstate commerce has never been formulated by the courts. Nor do we attempt such a definition here, for its facets are far too numerous and diverse. However, it is the opinion of this court that certain essential elements must exist before the sales made by the defendant can be classified as constituting interstate commerce. In the case of Carter v. Carter Coal Co., 298 U.S. 238, 298, 56 S.Ct. 855, 867, 80 L.Ed. 1160, Mr. Justice Sutherland, in delivering the opinion of the court, stated:

"As used in the Constitution, the word 'commerce' is the equivalent of the phrase 'intercourse for the purposes of trade,' and includes transportation, purchase, sale, and exchange of commodities between the citizens of the different states."

Thus we see that three fundamental elements must exist before the transaction becomes affixed with the character of "interstate commerce". First, there must be the element of a sale or exchange. Second, the transaction must be between citizens of different states, or one which creates commercial traffic between different states. Third, there must be the element of transportation. In the case at bar we find that two of these elements have assuredly been satisfied; namely, there has been a sale between citizens of different states. The existence of the element of transportation is not so readily determined. To begin with, there is some question as to what is the requisite transportation. It is almost axiomatic that the transportation intended must be that between states, and not merely that within a single state. However, actual transportation need not have occurred before the transaction becomes endowed with the attributes of interstate commerce. It is enough that a party "sells and ships, or contracts to sell and ship, the commodity to customers. in another state * * *." Carter v. Carter Coal Co., supra, 298 U.S. at page 303, 56 S.Ct. at page 869. Defendant has not, since the rendition of the injunction order, personally shipped or contracted to ship any of his product to persons in other states. The Government takes the position that the mere culmination of a sale between citizens of different states constitutes interstate commerce, where the purchaser, to the knowledge of the vendor, may return to his native state with the product. This court cannot believe that such a broad application of the Commerce power was ever intended, nor that it is justified under the Constitution. It has previously been determined by the

Supreme Court that a product merely in the stage of production is not subject to the Commerce power even though it is fully intended that it shall subsequently be transported to another state. Carter v. Carter Coal Co., supra. Nor does this court believe that the mere sale of goods constitutes interstate commerce, unless there is an actual movement out of the state, or such is the purpose and intent of both parties in making the sale. However, the Government cites a number of cases which it contends bear out its assertion that defendant is engaged in interstate commerce. A few of the most important of these cases will be considered.

The Government cites the case of Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 109, 66 L.Ed. 239. In that case sale was made in Kentucky, the state of the vendor, to a citizen of the State of Tennessee, the product being delivered to the purchaser in Kentucky. The Supreme Court ruled that the transaction was in interstate commerce. From this, the Government has deduced a rule whereby all such sales between citizens of different states will constitute interstate commerce. However, counsel overlook the fact that delivery of the commodity in question was made on board the cars of a common carrier, in continuance of a long established practice whereby the commodity was to be immediately forwarded to the purchaser's mill. The contract required delivery on board the cars of a public carrier for that very purpose. The Supreme Court considered these facts to be of the utmost importance, for Mr. Justice Van Devanter stated in the opinion of the court:

"The state court, stressing the fact that the contract was made in Kentucky and was to be performed there, put aside the further facts that the delivery was to be on board the cars and that the plaintiff, in continuance of its prior practice, was purchasing the grain for shipment to its mill in Tennessee. We think the facts so neglected had a material bearing and should have been considered. *They showed that what otherwise seemed an intrastate transaction was a part of interstate commerce.*" (Emphasis added.)

The latter portion of Mr. Justice Van Devanter's statement leaves with this court the understanding that had it not been for the *established* practice of the purchaser and vendor, taken into consideration with the delivery of the grain to a common carrier, the court would have determined this transaction to be wholly *intra*state. There is no such similarity of conditions under the facts of the case now before this court. Mere knowledge that the purchaser is a citizen of another state cannot possibly establish such a practice. Delivery was made at the residence of the defendant, personally, to the purchaser. For this court to determine that defendant must inquire into the citizenship of every customer would be to place an intolerable burden upon all persons who sell to the general public. Instead, this court must look to the immediate end which the parties to the transaction have in view. Was it the purpose of the parties to place the commodity within the stream of commerce and transport it to another state? Here, the immediate end in view is to sell the product; how the purchaser uses it or where he takes it is of no concern to the defendant. The fact that defendant was aware that some of his customers were residents of another state does not alter this rule.

Another case relied upon by the Government is United States v. Kaadt, 7 Cir., 171 F.2d 600. In that case the defendant operated a clinic in Indiana for the treatment of diabetics. When persons who had come to the clinic for treatment, returned to their homes in other states, Dr. Kaadt shipped them a special drug, which was misbranded under the provisions of the Federal Food, Drug, and Cosmetic Act. Dr. Kaadt was charged with such practices in five counts. There is some confusion as to the exact facts concerned in the next two counts, but we shall adopt the most charitable interpretation possible to the Government's case. In these two instances, Dr. Kaadt delivered the drug to the patients *before* they left the clinic and they personally carried it into their home state. All of these counts were upheld as being violative of the Federal Food, Drug, and Cosmetic Act. However, that case is not deter-

minative of the issues before the court, for Dr. Kaadt had already placed the sale within the category of interstate commerce, by reason of the fact that he had earlier mailed letters to the purchasers in their home states, advertising the drug and directing the manner in which it was to be used. The court expressly found that these letters constituted part of the misbranding with which the defendant was charged. In the case before this court, defendant has not engaged in such a practice.

The case of Currin v. Wallace is relied on by the Government to support the rule that where goods are purchased in one state for the purpose of transporting them to another, then the sale is as much a part of interstate commerce as is the transportation. This premise is undeniably sound and one with which this court cannot take issue. However, the basic issue here, is whether defendant did in fact sell his product for the purpose of transporting it to another state. The citation of this case assumes the very point at issue.

Counsel for defendant refer the court to the case of Eastern Air Transport v. Tax Commissioner, 285 U.S. 147, 52 S.Ct. 340, 341, 76 L.Ed. 673, opinion by Mr. Chief Justice Hughes. In that case the State of South Carolina imposed a tax on the sale of aircraft fuel purchased by an air-transport company for use in its planes, which were engaged in interstate commerce. The air-line company contended that this tax constituted a burden on interstate commerce. In upholding the tax, the Supreme Court stated: " * * * the mere purchase of supplies or equipment for use in conducting a business which constitutes interstate commerce is not so identified with that commerce as to make the sale immune from a nondiscriminatory tax imposed by the State *upon intrastate dealers.*" (Emphasis added.)

In another place, the Court states: "Treating the tax as an excise tax upon the sales does not change the result in the instant case, *as the sales are still purely intrastate transactions.*" (Emphasis added.)

In both of these statements, the court clearly implies that, even though the fuel is to be used in interstate commerce, the transaction between the vendor of the fuel and the operator of the air-line company is wholly of an *intra*state character. What the purchaser of the fuel chose to do with the commodity after its purchase was of no concern to the vendor.

This court is somewhat astonished to find that an independent gasoline dealer doing business at Ardmore, Oklahoma, who sells fuel to a motorist having a Texas license tag on his automobile, becomes engaged in interstate commerce simply because the purchaser may drive on into Texas and burn part of the fuel there. Yet this is the substance of the Government's pretension. There is yet a further anomaly to the Government's position. If a citizen of Oklahoma purchases a piece of wearing apparel in a Kansas City store, does the vendor thereby become engaged in interstate commerce and subject to Federal regulation, even though he is fully cognizant of the purchaser's native state? Obviously, not. Such an extension of the Commerce power would be wholly unwarranted and an invasion of the regulatory rights of the sovereign states.

■ Perhaps the activities of the defendant constitute a recognizable evil which should be apprehended. However, great care must be taken so that, by crushing one evil, the courts do not create in its stead an even greater one. Congress possesses no general power to regulate for the promotion of the general welfare. It is limited in its powers to those which are granted it by the Constitution, and these powers must be either expressly given, or arise by necessary implication. Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L.Ed. 97.

■ It is the opinion of this court that so long as the defendant does not solicit orders for his product in other states, and does not ship or aid in the shipment of his product to another state, but merely sells his product to persons who personally come to his residence, purchase and carry away this remedy, he is not engaged in interstate commerce, even though some of

his customers be residents of another state, and this to the knowledge of the defendant. Therefore, we cannot find the defendant to be in contempt of court for violation of the injunction order.

Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.