**STOKELY–VAN CAMP, Inc. v. HACKERT.**

**Civ. A. No. 810.**

United States District Court
S. D. Iowa, Central Division.

Jan. 10, 1948.

---

[8] In 1948 Revision, 28 U.S.C.A. § 2680.

H. R. Duncan, of Des Moines, Iowa, Jesse E. Marshall, of Sioux City, Iowa, and C. P. Dorr, of San Francisco, Cal., for plaintiff.

Dickinson & Dickinson and Jens Grothe, all of Des Moines, Iowa, for defendant.

DEWEY, District Judge.

The above entitled action came on for hearing in open court at Des Moines, Iowa, on its merits, on the 31st day of December, 1947, and was submitted to the court for decision without arguments.

On June 15, 1946, the defendant purchased from the plaintiff 2250 cases of clingstone peaches. The transaction was in writing and therein it is recited that the buyer (defendant herein)—"has this day bought, and Honor Brand Frosted Foods, Division of Stokely-Van Camp, Inc., hereinafter called Seller, has this day sold the following quantities of Frozen Foods, as per specifications, prices, terms and conditions stated below and on the reverse side of this contract."

The plaintiff has its principal place of business at Oakland, California, and is in the business of packing and selling frozen foods on a national scale.

It is indicated in the contract that the goods would have to be packed and collected from different points and for that reason the seller reserved the routing of the freight; and the goods were to be shipped as soon as practicable after packing.

It appears that all of the peaches thus purchased were shipped to defendant in Iowa and paid for by the defendant except 1250 cases, and of these 263 cases were sold by the plaintiff for the defendant's account, leaving a balance of 987 cases which have not been paid for and the purchase price of which is the subject matter of this suit.

Plaintiff asks for a judgment against the defendant for the purchase price of said 987 cases of peaches, or for $5823.30 and for the storage charges from May 6, 1946, to August 6, 1947, in an amount of $592.22, and for interest on these amounts from August 6, 1947.

The written contract referred to provided that the terms were—"Sight Draft, Iowa Trust & Savings Bank, Oskaloosa, Iowa." And the directions were "Ship to—Shaffer Ice & Cold Storage—Ottumwa, Iowa." And "Seller's opening price when named guaranteed to conform to all OPA regulations."

The contract was signed on its date at Oskaloosa, Iowa, by the defendant and the Honor Brand Frosted Foods Corporation by R. J. Wagner, a duly authorized agent. It was executed in duplicate, one copy being left with the defendant and the other one taken by Mr. Wagner, who consummated the sale, or sent by him to California where it was later signed by Mr. T. C. Waterman, assistant to the vice-president of Stokely-Van Camp, Inc.

It will be noted that the contract was not signed by this plaintiff, but the defendant requested the following admission of fact under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A, and this plaintiff agreed to the following admission: "That the written contract was entered into by and between the plaintiff and defendant on or about June 15, 1946, by the terms of which plaintiff agreed to sell and deliver among other things to the defendant, 1250 cases of $\frac{9}{10}$th clingstone peaches." I have to assume therefore that there is no claim other than that the contract signed

by the Honor Brand Frosted Foods Corporation was in truth and in fact a contract of Stokely-Van Camp, Inc., a corporation. The duplicate of the contract left with the defendant was never signed by Mr. Waterman.

The contract appears to fix the price at the highest price which was permitted to be charged by the OPA regulations, and both parties agree that the contract price for these frozen peaches was 14¾ths cents per pound f. o. b. at the plant. The written contract further provides on the reverse side in print, among other things, as follows:

"Terms: F.O.B. rail shipping points designated by Seller * * *

"Shipment and Storage: On account of shipment from different points, Seller reserves the routing of freight. Notwithstanding shipped to Seller's order, goods are at risk of Buyer from and after delivery to carrier, and Buyer hereby assumes all responsibility for shortage, loss, delay or damage in transit upon issuance to Seller by carrier of clean bill of lading or shipping receipt. * * *

Goods to be shipped at Seller's discretion as soon a practicable after packing, unless Buyer notifies Seller not to ship as soon as packed in which event Seller may place goods in any cold storage warehouse designated by Seller, and the placing of goods in a cold storage warehouse by the Seller shall constitute delivery to the buyer. * * *

"Cold Storage and Insurance: Freezing and first month's storage shall be for the account of the Seller, thereafter all storage incurred shall be for the account of the Buyer, to be billed and paid for monthly. * * *

"Scope of Contract: * * * Brokers and salesmen have no authority to execute this contract, nor to waive, change or add to any of the terms or conditions covered by this contract.

"Interpretation of Contract: It is agreed that this contract is entered into and shall be interpreted according to the laws of the State of California.

"Prices on this contract are based on Seller's present permitted ceiling. In the event that OPA, or any other Government agency permits additional increases, the said increases may be added to these prices on any unshipped portion of contract at the time the increase is permitted."

Plaintiff requested the defendant to take delivery of the balance of these goods, or the 987 cases of frozen peaches.

The peaches were deposited by the plaintiff with the Modesto Refrigeration Company, Modesto, California, but the evidence does not disclose when they were so deposited with that refrigeration company.

The main affirmative defenses of the defendant, as set out in his written answer, are:

1st. That on or about September 15, 1947, the parties entered into an oral agreement whereby on consideration of defendant purchasing a large quantity of various frozen fruits and vegetables the plaintiff promised and agreed to cancel the contract referred to in plaintiff's petition.

2nd. That the plaintiff corporation is a stock corporation, organized and carried on for pecuniary profit, and that this corporation has not obtained from the Secretary of State of the State of Iowa a permit to transact business in this State and is not qualified to engage in business within the State of Iowa.

That the plaintiff corporation has transacted and been engaged in business in the State of Iowa for a number of years last past, in both intrastate and interstate commerce, and the written contract relied upon in plaintiff's petition is an Iowa contract.

That under the Code of Iowa the plaintiff cannot maintain the instant cause of action within this state. That statute is as follows: "Sec. 494.9 (Code of Iowa, 1946) Denial of right to sue. No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such permit."

The permit referred to is the permit to transact business in the State of Iowa procured from the Secretary of State, and plaintiff corporation admits that it does not have any such permit.

840

Defendant claims also that on or about the month of February 1947, he cancelled the contract and that the plaintiff after the cancellation failed to sell and mitigate the damages resulting in a much greater damage to the defendant than if the plaintiff had disposed of the peaches and reduced the damage.

Plaintiff on the other hand claims that the contract was executed in and is a California contract and that the plaintiff never transacted business in the State of Iowa.

It also claims that R. J. Wagner was not authorized to execute the contract for the plaintiff and that as a salesman he did not have authority to execute the contract under the terms of the contract itself, but it was executed when signed in California by T. C. Waterman.

On these issues I make the following

Findings of Fact.

1st. That R. J. Wagner did represent the plaintiff in the sale and execution of the contract of June 15, 1946, and that the contract was executed in the State of Iowa.

■ Mr. Wagner, both before and after the execution of this contract, had represented the plaintiff in sales of its fruit in the State of Iowa and had sold goods by written agreements in the name of the plaintiff, which he signed as agent, some of which he signed with his full name and some partly by initials. The plaintiff permitted and encouraged the trade to believe that Mr. Wagner was its duly authorized agent to sell its product by oral and written agreements, and in this sale to the defendant he was acting within the scope of his apparent authority.

There is nothing in the contract to the effect that it would only be valid when signed in California.

And in answer to cross interrogatory #31 in the deposition of T. C. Waterman, he stated that Mr. Wagner's position with the plaintiff was that of "territorial salesman." He was therefore more than an ordinary soliciting salesman and it is noticeable that he was not a witness in the case

2nd. The defendant has failed to establish by a preponderance of the evidence that there was an oral agreement in February of 1947, or at any other time, wherein it was agreed that if defendant would purchase additional supplies from the plaintiff the latter would consent to a cancellation and termination of the contract of June 15, 1946, for the balance of the peaches which had not been delivered.

All of the agreements between the parties were in writing, but there is not a scrap of writing to indicate that there was a contract such as that claimed by the defendant. It may have been that there was such an agreement, but the defendant has failed to establish it by a fair preponderance of the evidence.

3d. I find that the defendant did on or about August 20, 1946, request the plaintiff to cancel the contract for the purchase of the peaches, dated June 15, 1946, but that the plaintiff refused to accede to his request to so cancel and that the parties thereafter recognized the contract as being in full force and effect.

However, the plaintiff knew that the defendant would like to be relieved from purchasing the 987 cases of peaches and it did endeavor to make a sale of them but was unable to do so because the market would not take them and they could only be sold at a great loss. Also, the evidence establishes that the plaintiff did do all that it could reasonably be expected to do to try and protect the defendant in loss on the contract.

4th. I find that the defendant refused to direct shipment of the remaining 987 cases of peaches and that the plaintiff placed the peaches in a cold storage warehouse and that in so doing it delivered the peaches to defendant. The evidence does not disclose the date when the peaches were so deposited.

5th. I find that the plaintiff was a foreign stock corporation with an office in the State of California and that under the terms of the contract of June 15, 1946, the delivery and shipment of the peaches was to be made from California to the State of Iowa and that the contract was an agreement for an interstate shipment of

peaches from California to the State of Iowa and the transaction therefore involved interstate commerce.

Plaintiff admits that it is a corporation as above and that it does not have a license to transact business in the State of Iowa.

The parties well knew at the time of the execution of the contract, and the contract itself indicates, that the goods purchased were in California and were to be collected and shipped to the defendant in Oskaloosa, Iowa, and that there was no way of carrying out the contract except by commerce between the states. The plaintiff both before and after the execution of the contract of June 15, 1946, made and consummated sales of goods in the State of Iowa. These sales had to do with the purchase of goods to be assembled in California and to be shipped from California to purchasers in the State of Iowa, and there was a course of dealings on the part of the plaintiff at the time of the execution of this contract of transactions in the State of Iowa and contracts for the sale of goods from California to be shipped to the several purchasers in Iowa.

Conclusions of Law.

1st. That the Iowa statute above set out prohibiting suits in Iowa on contracts made by foreign corporations within the State has been held by the Supreme Court of the State of Iowa to be valid and subsisting, but such contracts are not void since the statute is merely a bar to the maintenance of an action in the courts of the State of Iowa on such contracts. Heyl v. Beadel, 229 Iowa 210, 294 N.W. 335, 130 A.L.R. 994.

2nd. That this prohibition is a valid and subsisting defense in the federal court in the State of Iowa and generally suits cannot be maintained on an Iowa transaction by a foreign corporation where the corporation was not authorized or licensed to transact business in this state. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657. And it would make no difference whether the statute forbidding the enforcement of a contract made in the State of Iowa was substantive or remedial. Guar-

anty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

3d. But where the contract as in the case of the contract made June 15, 1946, in controversy in this case, provides for a transaction whereby goods were to be assembled and shipped from one state to another, a statute such as the one here prohibiting the institution of suits is unenforceable as being a burden on and an interference with interstate commerce which is exclusively under the jurisdiction of the United States. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmers Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Currin v. Wallace, 306 U.S. 1, 10, 59 S.Ct. 379, 83 L.Ed. 441; Palmer v. Aeolian Co., 8 Cir., 46 F.2d 746.

I am unable to distinguish the situation between the transaction here and that determined in the case of Palmer v. Aeolian Co., supra. In that case the Circuit Court of Appeals of this Circuit (8) held that this very same statute under consideration here was ineffectual against a transaction in interstate commerce, such as is also here in controversy.

It is stated in Vol. 11 of American Jurisprudence, "Commerce" Sec. 125, as follows: "The right to enforce an obligation arising out of interstate commerce, if not a part of such commerce, is so directly connected with it and is so essential to its existence and continuance that the imposition of unreasonable conditions upon this right must necessarily operate as a restraint or burden on interstate commerce." Citing, Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478 and Sioux Remedy Co. v. Cope, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193.

The first of these cases (282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478), in a decision by Justice Hughes, shows a situation very similar to that of the case at bar and, among other things, says:

"The ordering and shipment of the goods constituted interstate commerce, and the obligation to pay and the right to recover the amount due, according to the

contract pursuant to which the goods were sent, arose in the course of that commerce." 282 U.S. page 497, 51 S.Ct. 296.

And "Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different States, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce." Continuing (282 U.S. page 498, 51 S.Ct. 296),

"Such commerce comprehends all the component parts of commercial intercourse between different states, and, according to established principle, any state statute which obstructs or lays a direct burden on the exercise of the privilege of engaging in interstate commerce is void under the commerce clause. * * * Accordingly, when a corporation goes into a state other than that of its origin to collect, according to the usual or prevailing methods, the amount which has become due in transactions in interstate commerce, the state cannot, consistently with the limitation arising from the commerce clause, obstruct the attainment of that purpose." 282 U.S. page 498, 51 S.Ct. 296.

Similar statements and conclusions are arrived at in the other case cited—Sioux Remedy Co. v. Cope, 235 U.S. 197, 204, 35 S.Ct. 57, 59 L.Ed. 193. And even the Supreme Court of the State of Iowa has recently held that where the plaintiff is engaged in interstate commerce the restrictions of this statute as to the right to maintain a suit in the State courts do not apply. Plattsmouth Bridge Co. v. Globe Oil Co., 232 Iowa 1118, 1125, 7 N.W.2d 409.

From the foregoing therefore my conclusions are that on June 15, 1946, the defendant did enter into a written agreement with the plaintiff whereby he purchased 987 cases of frozen peaches. That these peaches were to be packed and shipped from the State of California within a reasonable time to the purchaser at Oskaloosa, Iowa, and the transaction was one in interstate commerce. That the contract was made in Iowa and was one of several contracts which had been entered into by the

plaintiff in Iowa wherein goods were sold by it to different purchasers under written contracts made in the State of Iowa and the goods delivered to purchasers in the State of Iowa from California.

That Mr. Wagner, who entered into the contract in Iowa with the defendant, was duly authorized to enter into such agreements and his actions and the Iowa contract were afterwards ratified by the plaintiff.

That the plaintiff company was not authorized nor licensed to do business within the State of Iowa and the sale of these goods in Iowa by it was a violation of the prohibition of a statute of the State of Iowa against a foreign corporation doing business within the State of Iowa without a license.

That the Supreme Court of the State of Iowa has confirmed in Heyl v. Beadel, 229 Iowa 210, 294 N.W. 335, 130 A.L.R. 994, as a valid exercise of power by the State of Iowa of a statute prohibiting the bringing of suits by unlicensed foreign corporations in the courts of the State upon transactions consummated in Iowa, as this one was; and under a recent holding of the Supreme Court of the United States in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, the plaintiff cannot recover in this court under the contract by reason of said statute, were it not that it appears to the court that the transaction in question was of an interstate character and that the requirement of the state statute that a foreign corporation should be licensed within the state to do business and that if it were not so licensed that it could not bring a suit within the state, is ineffective as laying a burden upon an interstate transaction for immediate shipment of fruit from California to the State of Iowa.

It follows that the plaintiff is entitled to recover in some amount as against the defendant under the written contract which he entered into on June 15, 1946.

While I find that there had been a delivery of the fruit in California, nowhere in the records, so far as I am able to determine, is there any statement as to when this delivery was made by placing the goods in storage in California, and I am there-

843

fore unable to find any date upon which the allowance of interest could be entered.

Also, I am unable to find any date upon which the fruit was placed in storage in California, nor the reasonable value of the storage charged, to enable me to find and determine the amount of any storage charges for which the defendant might be liable.

■ The contract provides, among other things, that where fruit is purchased and required to be placed in storage as a delivery to the buyer, that the freezing and first month's storage shall be for the account of the seller. It would therefore appear that at least one month of storage from and after the time of its deposit with the cold storage plant in California would have to be paid for by the seller. There is no evidence as to how the plaintiff has acquired any cause of action as against the defendant for the recovery of these storage charges. There is nothing to indicate that the plaintiff holds the cause of action against the defendant for these cold storage charges and it is perfectly apparent that if a recovery were permitted in favor of the plaintiff that it would not cancel any obligation that the buyer might have to the owner of the cold storage plant for these charges.

It is also noticeable that the claim of the plaintiff is for cold storage rentals from May 6, 1946, which is almost a month and a half prior to the time that the contract of June 15, 1946, was entered into.

I am unable to find that the plaintiff is entitled to recover as against the defendant for any storage charges or interest.

I find that the plaintiff is entitled to recover for the purchase price or damages which would be equal to the purchase price on the 987 cases of peaches in the amount of $5823.30, and that a request of the plaintiff for interest thereon and for storage charges should be and the same is denied.

It is therefore ordered that upon the Findings of Fact and Conclusions of Law this day made by the court, that the plaintiff is entitled to recover as against the defendant in the sum of $5823.30, and is not entitled to recover any further or additional amounts upon its claim; and

judgment is therefore ordered to be entered for said amount in favor of the plaintiff as against the defendant, and both parties except.